573 P.2d 58

Barbara Kiewit TAYLOR, Appellant,

v.

Hubert CATÉ, Appellee.

No. 13345–PR.

Supreme Court of Arizona,
En Banc.

Dec. 5, 1977.

Rehearing Denied Jan. 4, 1978.

Everett, Bury & Moeller, P. C., by David C. Bury and Dan A. Sinema, Tucson, for appellant.

Rees, Mercaldo & Smith, P. C., by Brian E. Smith and Paul G. Rees, Jr., Tucson, for appellee.

HAYS, Justice.

We granted a petition for review of a memorandum decision of the Court of Appeals affirming the trial court's refusal to grant a mistrial based on misconduct of counsel. That decision, *Taylor v. Caté*, No. 2 CA–CIV 2336, is vacated.

In order to fully understand this matter, the facts must be laid out in some detail.

In July, 1974 a two-car collision occurred in Tucson, Arizona, at the intersection of 5th Street and Columbus sometime in the early hours of the evening. Plaintiffs below, Joe and Hubert Caté, were traveling north on Columbus in a 1974 Ford Bronco. Defendant below was traveling east on 5th Street in a 1966 Ford Falcon, and collided with the side of the Bronco. Hubert Caté, hereinafter appellee, suffered serious burn injuries from the accident, and it is only from the $226,000 verdict in his favor that defendant Taylor, hereinafter appellant, appeals.

The only factual issue at trial was which of the drivers, appellant or Joe Caté, ran a red light. The appellee presented several witnesses who testified that Joe Caté proceeded through the intersection legally; that is, on a green light and at a speed at or

**368**

below the speed limit. Other than appellant herself, only one witness, Kathy Peterson, testified for appellant. It was the testimony of that witness that the Caté vehicle ran a red light at a rather high rate of speed and that the Taylor vehicle was proceeding through a yellow light at a legal speed. Peterson's testimony was clearly critical to a successful defense.

During cross-examination of Kathy Peterson, the following took place:

PLAINTIFF'S COUNSEL: Did you talk to a man—and answer just yes or no—after the accident, did you talk to a man and give certain statements to him? Just answer yes or no.

A: Yes.

Q: Did he call you and take a recorded statement over the telephone . . .?

A: Yes.

Q: Did he—did you foul up that statement according to him?

A: Yes.

.    .    .    .    .

Q: And then he came out to see you because he said you'd fouled up the first statement . . .?

A: Yes.

Q: And then he actually took a written statement, as well . . . ..

A: Yes.

.    .    .    .    .

PLAINTIFF'S COUNSEL: Okay. Your Honor, I would request that the statements . . . referred to be produced by the defense at this time.

DEFENSE COUNSEL: Well, they're both attached to the deposition, Your Honor.

PLAINTIFF'S COUNSEL: [T]wo of them are, but the transcript of the telephone conversation was never produced.

.    .    .    .    .

My point is, Your Honor, that the witness has testified to three statements. One a recorded statement, and she was told by some individual that she had fouled it up. Then a second statement was taken—a typed statement—. . . and then a handwritten . . . .. What I want is that statement which counsel avowed . . . he did not then . . . [at deposition] . . . have, and which she says she gave over a telephone, and somebody told her she'd fouled up.

All of the above took place in front of the jury. More followed, due to defense counsel's confusion over what plaintiff's counsel was getting at, but it's unnecessary to repeat all of what transpired. Suffice it to say that the jury could be left with no impression other than that the defense was hiding a damaging statement, made by its only witness, to some unknown and unnamed person.

What actually occurred was this:

Kathy Peterson, confused as to which car was traveling in which direction because of how the cars landed after the collision did, indeed, give a "fouled up" statement to appellant's insurance adjuster over the telephone. When the reason for her misconception of the cars' directions became apparent, another statement was taken from and signed by Ms. Peterson.

All this was quite apparent at the November 19, 1974 deposition taken of Ms. Peterson by appellee's counsel, at which time he requested all statements made by Ms. Peterson. He was given the signed statement and an unsigned statement (drawn by his own assistant) and at that time defense counsel avowed that there was no recorded statement in his file. As of November 19, 1974, plaintiff's counsel was aware of the adjuster and his participation in this matter. He could easily, in the period of over one year between the November, 1974 deposition and the January, 1976 trial, have deposed him or demanded of the defense that they produce the tape or a transcription thereof. None of this was done, however, and plaintiff's counsel instead waited to make this demand until the middle of trial, during cross-examination of the defense's critical witness, and in front of the jury. We think such an action by an experienced attorney may be explained only one way: he intended that the jury be left with the impression that the defense was hiding a damaging statement.

An appellate court will normally defer to the trial court's ruling on misconduct of counsel, unless it clearly appears that that court has abused its discretion. *E. L. Jones Construction Co. v. Noland*, 105 Ariz. 446, 466 P.2d 740 (1970). Here, we think an abuse of discretion is apparent.

Some remarks and conduct by counsel cannot be cured by objections and admonishments. *Elledge v. Brand*, 102 Ariz. 338, 429 P.2d 450 (1967). The question is,

"[u]nder what circumstances do remarks of counsel result in reversible error? An uncontradictable answer must be: they are reversible error when, because of them, the parties have not had a fair trial." *Smith v. Blakely*, 213 Kan. 91, 515 P.2d 1062 (Kan.1973) at 1067.

We think it clear, under the circumstances outlined above, that a fair trial for the defense was quite impossible after the conduct and demands of plaintiff's counsel before the jury.

Reversed and remanded for a new trial.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN and GORDON, JJ., concur.