708 P.2d 1331

**Angelo BUFFA and Jerri Buffa, husband and wife, Plaintiffs-Appellees,**

v.

**Linda Kay SCOTT, Defendant-Appellant.**

**No. 1 CA–CIV 7986.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 22, 1985.

Hyder & Brand by William F. Hyder, Phoenix, for plaintiffs-appellees.

Oplinger & Barker, P.A. by Richard H. Oplinger, Thomas J. Howard, Tempe, for defendant-appellant.

## OPINION

JACOBSON, Chief Judge.

The issue on appeal is whether the trial court properly granted a new trial on the grounds that it committed legal error in excluding evidence of defendant's blood-alcohol level based upon her claim of doctor-patient privilege.

Clifford Buffa was killed in an automobile accident when the vehicle driven by the defendant, Linda Scott, rear-ended a disabled vehicle being pushed by Buffa and a friend. The complaint alleged that Linda Scott was negligent in operating an automobile while under the influence of alcohol and driving at an excessive speed. An amended answer denied that Scott was negligent or under the influence of intoxicants and alleged that the accident was the result of contributory negligence and assumption of the risk by Buffa.

At trial, Scott testified that there was nothing she could have done to avoid the accident because it was dark, the Buffa vehicle was unlit, the scene of the accident was poorly lit and she had turned her head to check for traffic. The accident occurred at 3:50 a.m. on October 25, 1981. Scott testified that on the evening of October 24, 1981, she had attended a social function with a friend where she drank three beers and two mixed drinks between 8:00 p.m. and 1:00 a.m. Scott left the social function when the restaurant closed and her companion drove her home. Sometime later, Scott drove to her friend's house and dropped off some articles he had forgotten. On the way home from her friend's house, she collided with the vehicle being pushed by Clifford Buffa. At trial, Scott denied that she was intoxicated or that alcohol consumption impaired her driving.

Scott received a lacerated lip injury in the accident. She received emergency treatment at the scene and was taken to John C. Lincoln Hospital. A blood-alcohol test was taken at the hospital which indicated that Scott had a blood-alcohol level of .265. The police officer investigating the accident looked at Scott's medical chart without her permission and later obtained a search warrant to obtain the test results. Criminal charges were brought against Scott, the charges were resolved by plea agreement, and no criminal trial was held.

The trial court ruled upon motions *in limine* that Scott's blood-alcohol test was inadmissible due to the doctor-patient privilege. Plaintiff's expert witness, a toxicologist, was allowed to testify regarding his opinion of Scott's blood-alcohol level (.27) based upon physical symptoms she exhibited at the time of the accident. Scott cross-examined the expert regarding his opinion as to the blood-alcohol level of a person consuming three beers and two Scotches as testified to by Scott. The expert concluded that the person would have a .015 blood-alcohol level and would be able to drive effectively. In final argument, Scott's attorney stressed that Buffa had failed to prove that Scott had consumed more alcohol than she testified to. The attorney repeatedly emphasized that the evidence did not show that Scott was intoxicated or that intoxication was a cause of the accident.

The jury returned a verdict against the plaintiffs and the plaintiffs filed a motion for new trial. The trial court granted plaintiffs' motion for new trial upon a combination of four factors: (1) the defendant testified by way of deposition as to her injuries and treatment; (2) the blood-alcohol reading was made public; (3) the purpose of the privilege would not be served

by its invocation under the circumstances of this case; and (4) the suppression of the blood alcohol test was "unjust and unfair in the circumstances of this trial."

■ It is clear that the results of the medical tests performed in connection with the treatment of the defendant at the hospital are subject to the doctor-patient privilege. *State v. Santeyan*, 136 Ariz. 108, 664 P.2d 652 (1983). The question then becomes whether the privilege was waived.

■ Since our ruling in this case is somewhat limited and the matter must be retried, we individually dispose of the stated reasons given by the trial court. First, the trial court concluded that a waiver could be based upon the testimony of the defendant given on cross-examination at a deposition. At that deposition, the defendant was asked to describe her injuries and the treatment she received for these injuries. In our opinion, contrary to the dicta contained in *Patania v. Silverstone*, 3 Ariz.App. 424, 415 P.2d 139 (1966)[1], the testimony by a patient on cross-examination at a deposition does not constitute a waiver of the doctor-patient privilege.

A.R.S. § 12–2236 provides that:

A person who *offers* himself as a witness and *voluntarily* testifies with reference to [a privileged communication] ... thereby consents to the examination of such attorney, physician or surgeon.

The weight of authority construing similar statutes holds that disclosures under compulsory cross-examination at a deposition are not "voluntary," and thus do not constitute a waiver. *Hemminghaus v. Ferguson*, 358 Mo. 476, 215 S.W.2d 481 (1948); 97 C.J.S., *Witnesses* § 310 at 859 (1957 & Supp.1985).

---

1. In *Patania,* the issue was whether the trial court erred in refusing an instruction that a party's failure to call a witness available to him, the plaintiff's treating physician, gave rise to an inference that the testimony would be unfavorable. The court held that under the facts of that case, an amputation of a tip of a finger which was obvious to all, the instruction was improper. The court went on to hold by way of dicta that since the plaintiff had testified at a deposition concerning the treatment received, the privilege was waived, since the defendant could have called the doctor as well as the plaintiff and the instruction was improper.

■ Also, in our opinion, the dissemination of the results of the blood test does not constitute a waiver in the absence of evidence that the defendant was the disseminator or authorized its publication. No such evidence exists. The correct analysis on this point is found in *Branch v. Wilkinson,* 198 Neb. 649, 256 N.W.2d 307 (1977):

> It is apparent from the record that the blood alcohol test results of Wilkinson were known to numerous people. The record, however, is devoid of any indication that the defendant had any control over the dissemination of this information, opportunity to halt or prevent it, or that he approved it. There is no evidence in the record that the defendant ever made the results of the test known to third persons.

*Id.* at 663, 256 N.W.2d at 316.

■ Similarly, here there is no evidence in the record that the defendant had any control over the actions of the media or police. To allow the privilege to be waived because of third party actions, absent the holder's participation, is not tenable. *Cf. State v. Waicelunas,* 138 Ariz. 16, 672 P.2d 968 (App.1983). Accordingly, we find the trial court's grant of a new trial based on such reasoning to be error.

Finally we turn to the trial court's conclusion that invoking the privilege here was not consistent with its purpose and was "unfair and unjust in the circumstances of this trial." At the heart of this issue is the oft stated statement that the privilege does not apply

> when the conduct [of the patient/claimant] ... places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. It is not to be both a sword and a shield...."

8 *Wigmore on Evidence,* § 2388 at 855 (1961) quoted in *Throop v. F.E. Young & Co.,* 94 Ariz. 146, 158, 382 P.2d 560, 568 (1963).

The hard issue is resolving at what point the conduct of the patient results in a waiver of the privilege because to permit its retention would be "unfair". We may start with the extremes. At one end, it is generally held that mere pleading allegations, putting in issue a physical condition or denying a physical condition do not constitute a waiver of the privilege. *Branch v. Wilkinson, supra; Arizona & N.M. Ry. Co. v. Clark,* 235 U.S. 669, 35 S.Ct. 210, 59 L.Ed. 415 (1915). At the other extreme, however, testifying as to a physical condition which is directly refuted by the true medical facts concerning the physical condition "is contrary to the spirit of the privilege and the purpose of trials to ascertain the truth." *Throop, supra.* Between these two extremes, what conduct of the patient which would make the retention of the privilege "unfair," must be left to the sound discretion of the trial judge.

In the context of the present controversy, the defendant's testimony concerning her intake of alcohol and her physical actions (ability to perceive, etc.) would not necessarily constitute a waiver of the privilege surrounding the blood-alcohol test. *See Capps v. Lynch,* 253 N.C. 18, 116 S.E.2d 137 (1960).

■ The defendant not only placed her physical condition in issue, however, but did so in a context that was contrary to the medical facts. Defense counsel was able to get plaintiff's expert to admit that the defendant under certain hypothetical circumstances may have had a blood-alcohol reading as low as .015 and that a person with a .015 blood-alcohol level would be able to drive effectively and would not be under the influence of alcohol. Defense counsel was then able to argue to the jury that "she was not impaired with respect to her driving, that she was, for all practical purposes, a sober driver."

Under these circumstances, we are unable to say that the trial court abused its discretion in determining that the defend-

ant's conduct was such that it would be both unfair and inconsistent with the privilege's purpose to permit it to be retained.

In this sense, the order granting a new trial is sustainable. Judgment affirmed.

BROOKS, P.J., and GREER, J., concur.