4 P.3d 413

**Patricia WIGGS, on her own behalf and on behalf of survivors of Shonna Wiggs, deceased, Plaintiff–Appellee, Cross–Appellant,**

v.

**CITY OF PHOENIX, a municipal corporation, Defendant–Appellant, Cross–Appellee.**

No. 1 CA–CV 97–0615.

Court of Appeals of Arizona, Division 1, Department E.

Sept. 21, 1999.

Review Granted in Part April 18, 2000.

Zachar & Doughty by Christopher J. Zachar and Sean W. Doughty, Phoenix, for Plaintiff–Appellee, Cross–Appellant.

Jones, Skelton & Hochuli by William R. Jones, Jr., and David C. Lewis, Phoenix, for Defendant–Appellant, Cross–Appellee.

## OPINION

THOMPSON, Presiding Judge.

¶ 1 This appeal arises out of a wrongful death action brought by the mother of Shonna Wiggs, the deceased. Prior to trial, defendant City of Phoenix designated Arizona Public Service (APS) as a non-party at fault. At trial, the jury returned a defense verdict. The trial court granted plaintiff's new trial motion. Defendant City timely appealed and plaintiff cross-appealed. We have jurisdiction pursuant to Ariz.Rev.Stat. Ann. (A.R.S.) §§ 12–120.21 and 12–2101(F)(1).

¶2 The first issue we address in this appeal by defendant is whether plaintiff is entitled to a new trial if the jury was improperly instructed on the law pertaining to an issue in the case, where the general defense verdict is sustainable on another evidentiary theory and plaintiff did not request a form of verdict indicating which theory the jury accepted. We also consider, in examining a new trial order on this basis, the effect of plaintiff's failure to object to jury instructions requested by defendant. A second issue concerns the merits of plaintiff's contention that the jury should have received an instruction that defendant was liable for the negligence of a non-party at fault. Plaintiff also raises evidentiary issues on cross-appeal.

## FACTUAL AND PROCEDURAL HISTORY

¶3 At approximately 8:05 p.m. on August 3, 1993, plaintiff's fifteen-year-old daughter, Shonna, was struck by a vehicle driven by Albert Armstrong and subsequently died. Shonna had been walking southbound across Cactus Road in the crosswalk at 34th Street. She used that same crosswalk approximately twice per day and did not have any vision or hearing problems.

¶4 Armstrong was traveling eastbound on Cactus Road at approximately forty miles per hour. In his deposition, he testified that he was not distracted from looking straight ahead, except to glance at his rear view mirror. When Armstrong saw Shonna, he made an unsuccessful attempt to avoid her. The right front side of his car struck her.

¶5 The accident occurred around dusk, and Armstrong stated that at the time, it was more dark out than light. Two motorists who witnessed the accident, Taryn Gibson and Kim Chapman, recalled that they saw Shonna looking straight ahead and walking at a steady pace while crossing the intersection. Chapman remembered thinking that Shonna would get hit because neither she nor Armstrong was slowing down.

¶6 Gibson testified that the streetlight at the crosswalk was not on at the time of the accident. She stated that it was dusk and that the streetlights did not come on until about the time that the paramedics arrived. However, the police report noted that the streetlight was on at the time of the traffic investigation, and another witness, Julie Rains, stated she noticed that the streetlight was on right after the accident.

¶7 According to defendant's expert, Dr. Ned E. Walton, streetlighting is typically controlled by a "photocell" that "senses the ambient daylight or dark condition" and reacts to it, setting the electricity to come on for the lights when it is dark and cutting off the electricity when it becomes light. Dr. Robert Bleyl, plaintiff's expert, also testified as to the effects of streetlight illumination on the roadway. He testified that, given the lack of any streetlighting, with only vehicle headlights illuminating the pedestrian, and at a rate of forty miles per hour with complete attentiveness, Armstrong could not have stopped his vehicle in time to avoid hitting Shonna.

¶8 Prior to trial, defendant designated APS as a non-party at fault. A 1986 contract between defendant and APS provided that APS was to "operate, maintain, and service the Streetlight Facilities for [the] City." Thus, defendant wanted to be able to provide evidence that would allow the jury to apportion to APS a part of any fault attributed to defendant.

¶9 However, defendant's expert, Dr. Walton, admitted that the responsibility to design, install, and maintain the intersection belonged to defendant. Furthermore, Michael Cynecki of the City's Street Transportation Department acknowledged that it is defendant, and not APS, who decides when the streetlights should be turned on and off.

¶10 Plaintiff requested that the jury be instructed that defendant was vicariously liable for any negligence by APS based on Restatement (Second) of Torts § 418. The trial court refused to submit such a jury instruction. Furthermore, plaintiff requested a "diminished capacity" instruction based on Shonna's age, but her attorney made no record when the proposed instruction was excluded.

¶11 The jury found in favor of defendant. Plaintiff moved for a new trial based on the

jury instructions concerning (1) defendant's vicarious liability for non-party APS, and (2) the diminished capacity standard of care for teenagers. The trial court eventually granted plaintiff's motion on both grounds. Defendant appeals from the order granting a new trial.

¶ 12 Plaintiff filed a cross-appeal alleging that the trial court erred in denying plaintiff's motion for a new trial based on (1) the denial of plaintiff's evidence of substantially similar accidents, and (2) the alleged misconduct of defense counsel.

¶ 13 The first basis of plaintiff's cross-appeal stems from plaintiff's desire to offer evidence of two prior accidents that occurred at the intersection in question on March 1, 1993 and May 6, 1993. Both of these accidents also occurred after dusk when the streetlight was allegedly not on yet. The trial court found that these accidents were not similar enough and disallowed the introduction of evidence regarding them.

¶ 14 Plaintiff also moved for a new trial based upon the alleged misconduct of defense counsel. Prior to trial, plaintiff made a motion in limine requesting that certain prejudicial information not be told to the jury. Subsequent to Shonna's death, but prior to trial, plaintiff gave birth to another child. Plaintiff argued that this was prohibited collateral source evidence and that under Arizona's wrongful death law, damages are fixed at the time of death so that any benefit she received from the after-born child was a collateral source and thus inadmissible.

¶ 15 The motion in limine also asked for the preclusion of evidence that plaintiff's boyfriend had died of AIDS not long before Shonna's death because such evidence was thought to be prejudicial and irrelevant.

¶ 16 The court apparently decided to take the matters raised in the motion in limine under advisement and advised that this evidence should not be mentioned until the court ruled.[1] However, before receiving a ruling, defense counsel elicited all of this evidence from plaintiff on cross-examination. Counsel stated that he "misunderstood" the court's earlier ruling that it would take the motion in limine under advisement. The court denied plaintiff's motion for a mistrial based on defense counsel's conduct and also refused to instruct the jury to disregard this evidence.

## DISCUSSION

### I. DEFENDANT'S APPEAL OF THE GRANT OF A NEW TRIAL BASED ON OMITTED JURY INSTRUCTIONS

#### A. Refusal to Instruct Jury That Any Fault of APS Could Be Attributed to Defendant

##### 1. Forms of Verdict

■ ¶ 17 No verdict form or special interrogatory was provided to the jury in which it could have indicated that, while it found the City not at fault, it did find APS to be at fault. The trial court granted a new trial in part based on its refusal to instruct the jury that the City was liable for APS's fault, and defendant challenges that ruling.

¶ 18 The City asserts that we can determine that the jury found APS not at fault. The jury chose a form of verdict which found for defendant City. However, we cannot discern from this whether the jury found any fault with APS, and accordingly we reject defendant's argument on this point.

■ ¶ 19 Nevertheless, the court should not have ordered a retrial on this basis. It was plaintiff's responsibility to propose forms of verdict that would have allowed the jury to assign fault to APS in the event it found that defendant was not itself negligent. A party who fails to request a desired form of verdict waives error in the omission of a verdict form. *See Kelman v. Bohi*, 27 Ariz.App. 24, 35, 550 P.2d 671, 682 (1976); *Nagle v. Conger*, 10 Ariz.App. 91, 95, 456 P.2d 411, 415 (1969); *see also Great Coastal Express, Inc.*

1. According to defendant, plaintiff never ordered a copy of the transcript of the in-chambers conference in which this evidence was discussed to support her cross-appeal. Therefore, the only evidence before us that the trial judge took the motion in limine under advisement is that he recalled having done so in the course of a hearing on plaintiff's motion for mistrial, of which we do have a transcript.

*v. International Broth. of Teamsters,* 511 F.2d 839, 845 (4th Cir.1975) (failure to request special verdict waives any error). Were the rule otherwise, a party could "sandbag" the trial court and obtain a new trial based on a defect within the party's power to avoid. As a result, substantial resources would be wasted, and one party would obtain a second chance at victory and undercut the worth of a verdict fairly won. *See General Petroleum Corp. v. Barker,* 77 Ariz. 235, 243, 269 P.2d 729, 734 (1954).

¶ 20 Plaintiff acknowledges that any conclusion drawn from the verdict as to whether APS had fault is speculative. In an analogous situation, where no special interrogatories were requested, we said that the verdict "must be upheld" if the evidence sustained it. *See State v. United Energy Corp. of America,* 151 Ariz. 45, 52, 725 P.2d 752, 759 (App. 1986); *see also Reese v. Cradit,* 12 Ariz.App. 233, 238, 469 P.2d 467, 472 (1970) (general verdict will stand if evidence on any theory submitted is sufficient to sustain it) (citing, *inter alia, American Surety Co. of New York v. Hatch,* 24 Ariz. 66, 206 P. 1075 (1922) (if failure to give requested instruction was error, but no special verdict sought, general verdict sustained); *Granone v. County of Los Angeles,* 231 Cal.App.2d 629, 42 Cal.Rptr. 34 (1965) (general verdict sustainable on basis of one issue will not be disturbed because there was reversible error on another issue); *Messier v. Zanglis,* 144 Conn. 449, 133 A.2d 619 (1957) (upon general verdict, error in jury instructions on one defense claim not reversible where no error on another)). In this case, there was evidence from which a reasonable jury could conclude that neither the City nor APS was at fault, and thus the evidence supports the verdict rendered that defendant was not liable to plaintiff.

■ ¶ 21 We conclude the verdict should have been upheld, rather than set aside in favor of a retrial. While a trial court has discretion in granting or denying a new trial motion, it must be a legal discretion within reason and the law. *See City of Phoenix v. Harlan,* 75 Ariz. 290, 293, 255 P.2d 609, 611 (1953). Because the jury's general verdict was supported by evidence on a defense theory unaffected by error, the law does not support the new trial order. Other considerations lead us to the same conclusion.

■ ¶ 22 Litigants may not obtain a new trial based on matters not objected to. *See General Petroleum,* 77 Ariz. at 243, 269 P.2d at 734 (failure to object to jury instructions or to omitted proposed instructions). Before trial, defendant submitted several proposed jury instructions, to which plaintiff offered no objection, and which the court gave. These include the following:

— "Fault is negligence that was a cause of Shonna Wiggs' death."

— "Negligence is the failure to use reasonable care."

— "Negligence is the failure to act as a reasonably careful person would act under the circumstances."

— "Before you can find any party at fault, you must find that party's negligence was a cause of plaintiffs' damages."

— "If you find that defendant was not at fault, then your verdict must be for defendant."

— "If you find that defendant was at fault, then defendant is liable to plaintiffs and your verdict must be for plaintiffs.... You should then consider defendant's claim that Shonna Wiggs, Albert Armstrong and/or A.P.S. were at fault."

— "The relative degrees of fault are to be entered on the verdict form as percentages of the total fault for plaintiffs' damages."

¶ 23 These instructions, collectively, directed the jury to allocate fault to a party based solely on *that party's negligence.* They were utterly inconsistent with plaintiff's claim that the jury should have been directed to allocate fault to the City based on *APS's negligence,* and yet plaintiff offered no objection to them. The instructions also told the jurors to proceed to consider whether APS had fault *only if they first found the City* "at fault," that is, *negligent.* Because plaintiff acquiesced in these instructions, she could not, after the conclusion of trial and a general defense verdict, claim error in the trial judge's failure to instruct the jurors to assign fault to defendant based on any deficiencies in APS's streetlight maintenance.

## 2. Non-delegable Duty

■ ¶ 24 The second issue is whether, even if the claim of error was not waived, the trial court should have ordered a new trial based on its failure to give plaintiff's proposed jury instruction. The requested instruction was based on the "non-delegable duty" doctrine embodied in Restatement (Second) of Torts § 418.[2]

¶ 25 The instruction proposed by plaintiff was as follows:

Plaintiffs claim the City did not maintain the accident scene in a reasonably safe condition, in part because the streetlights near the accident scene were not illuminated. The City claims that it contracted with Arizona Public Service Company (APS) to maintain the streetlights. The City claims that if there is any deficiency in the time the streetlights became illuminated, APS and not the City is liable.[3]

You are instructed that the City of Phoenix has a duty to maintain a public highway in [a] reasonably safe condition for use of the public. You are further instructed that if the City entrusted maintenance of a highway to an independent contractor like APS, the City is subject to the same liability for physical harm to persons using the highway caused by the negligent failure of the contractor to make it reasonably safe, as though the City had retained the work in its own hands. Accordingly, if you find APS negligently failed to maintain the subject streetlights, then the City of Phoenix is subject to liability as if the City itself had maintained the streetlights.

■ ¶ 26 We take no issue with plaintiff's exposition of the rule of law which spawned this instruction. As plaintiff explains, the non-delegable duty doctrine is viable in our comparative fault system. It provides that a party such as the City cannot escape its obligations by delegating to another the performance of its duty to maintain safe streets. *See, e.g.,* Stuart M. Speiser, Charles F. Krause, Alfred W. Gans, I The American Law of Torts § 4:32, at 707 (1983) ("A non-delegable duty . . . is a duty of care which the [e]mployer owes to the public which cannot be discharged by the hiring of another").

¶ 27 The difficulty instead lies in how the instruction employs the non-delegable duty doctrine in a comparative fault case. The proposed instruction told the jury that the City bears all of the fault of APS.[4] That is incorrect. It is the jury's role to allocate fault. As our supreme court has said, "[w]e have no doubt that jurors are capable of evaluating degrees of fault, and the statute

---

2. Restatement (Second) of Torts § 418 (1965) states:

(1) One who is under a duty to construct or maintain a highway in reasonably safe condition for the use of the public, and who entrusts its construction, maintenance, or repair to an independent contractor, is subject to the same liability for physical harm to persons using the highway while it is held open for travel during such work, caused by the negligent failure of the contractor to make it reasonably safe for travel, as though the employer had retained the work in his own hands.

(2) The statement . . . applies to any place which is maintained by a government for the use of the public, if the government is under the same duty to maintain it in reasonably safe condition as it owes to the public in respect to the condition of its highways.

3. In fact, as we discuss below, this did not accurately describe the City's claim. The City admitted responsibility for directing, in its contract with APS, that the light come on at dusk.

4. It is the following language which we find problematical:

[T]he City is subject to the *same liability* for physical harm to persons using the highway caused by the negligent failure of the contractor to make it reasonably safe, as though the City had retained the work in its own hands. Accordingly, if you find APS negligently failed to maintain the subject streetlights, then the City of Phoenix is *subject to liability as if the City itself had maintained the streetlights.* (Emphasis added.)

We recognize that some of this language is adapted from Restatement § 418. However, the Restatement addressed only the non-delegable duty doctrine, and not comparative fault in a case involving such a duty.

We also emphasize that we do not hold that an instruction regarding non-delegable duty is always inapt in a comparative fault case. We hold only that this particular proposed instruction was ill-suited to convey the impact of the doctrine. It is not difficult to imagine an instruction that would be proper. In essence, such an instruction would state that while the City could not be discharged of its duty by pointing to APS's responsibility for maintaining streetlights, the jury should allocate their relative fault.

reflects our legislature's agreement." *Hutcherson v. City of Phoenix*, 192 Ariz. 51, 55, ¶ 21, 961 P.2d 449, 453 (1998). That is precisely what the statute provides:

> In assessing percentages of fault *the trier of fact shall consider the fault of all persons* who contributed to the alleged injury, death or damage to property, regardless of whether the person was, or could have been, named as a party to the suit.

A.R.S. § 12–2506(B) (emphasis added).

¶ 28 The flaw in the proposed instruction is even more evident when we consider another subsection of the comparative fault statute. The instruction indicated that the fault of the City and APS is joint rather than several by stating that the City bears all of APS's fault. The legislature, however, has limited joint liability to specific exceptions:

> The liability of each defendant is several only and is not joint, except that a party is responsible for the fault of another person, or for payment of the proportionate share of another person, *if both the party and the other person were acting in concert or if the other person was acting as an agent or servant of the party.*

A.R.S. § 12–2506(D) (emphasis added). APS was not the agent of the City, but was an independent contractor. *See* Warren A. Seavey, The Law of Agency § 6, at 8 (1964) (building contractors and the like are not agents); *see also* Restatement of Agency § 2 cmt. b (1958) (contractor who is not subject to other's direction in the conduct of the work is not agent of the other). The City thus was not excepted from the several liability attendant to our comparative fault system.

¶ 29 We believe that our comparative fault system encompasses the situation in which a defendant's duty was "non-delegable." Comparative fault principles apply whatever the relationship between the parties and the nature of the duty owed. *See Natseway v. City of Tempe*, 184 Ariz. 374, 376–77, 909 P.2d 441, 443–44 (App.1995) (city's fault in police chase of suspect vehicle resulting in collision properly compared with that of driver of pursued vehicle) (citing *Dietz v. General Elec. Co.*, 169 Ariz. 505, 509–10, 821 P.2d 166, 170–71 (1991) (adoption

of comparative fault and contribution among tortfeasors, with abrogation of joint liability, established system "making each tortfeasor responsible for paying his or her percentage of fault, *and no more*")); *see also Hutcherson*, 192 Ariz. at 55, ¶ 21, 961 P.2d at 453 (jury appropriately allocated "responsibility" for two deaths between killer and municipality obliged to attempt to prevent killings); *see also McKillip v. Smitty's Super Valu, Inc.*, 190 Ariz. 61, 64–65, 945 P.2d 372, 375–76 (App.1997) (comparing store's fault in slip and fall case with fault of unknown person who dropped wax paper on floor); *see also Ocotillo West Joint Venture v. Superior Court*, 173 Ariz. 486, 844 P.2d 653 (App.1992) (although golf course which served liquor to decedent owed non-delegable duty of care, golf course's fault arising from dramshop liability properly compared with fault of friend who gave decedent keys to car before fatal crash). Our comparative fault system requires consideration of "all types of fault committed by all persons." *Thomas v. First Interstate Bank of Arizona*, 187 Ariz. 488, 489, 930 P.2d 1002, 1003 (App.1996).

¶ 30 A final look at the potential liability of APS and the City further illustrates the defect in plaintiff's proposed instruction. Under the non-delegable duty doctrine, the City cannot avoid responsibility by pointing the finger at negligence by APS. The duty to ensure maintenance of safe streets remains firmly planted at the City's feet.

¶ 31 But that does not mean that APS bears no liability. Neither the parties' briefs nor our own research reveals that "non-delegable duty" means that the contractor can act negligently with impunity. Thus, the jury has fault to compare: the City's own negligence (if any), the City's responsibility for APS's negligence, and APS's negligence (if any).

¶ 32 At bottom, the non-delegable duty doctrine is one which prevents the City from avoiding all liability by delegating the performance of its duty to another. The comparative fault system addresses a different question: *How much* liability should each party bear? Plaintiff's proposed instruction conflated the two. It indicated that the City

should bear *all* of the liability for APS's negligence. That would not have correctly guided the jury in allocating fault. Accordingly, the trial court should not have granted a new trial based on its prior refusal to give an erroneous jury instruction. *See Harlan,* 75 Ariz. at 293–94, 255 P.2d at 611–12.

¶ 33 The dissent asserts that the City, after having consistently conceded that its duty to maintain safe streets was non-delegable, then incongruously presented the jury with a "final-argument suggestion" that APS should bear responsibility if the streetlight had malfunctioned. According to the dissent, plaintiff's ability to rebut this "final-argument suggestion" was impaired by the failure to give the instruction plaintiff wanted. As we have explained, plaintiff's requested instruction was erroneous, and thus could not have helped cure any confusion the jury could have had about allocating fault. But the implication that the City's attempt to assign responsibility for the accident to APS was a change in tactics employed late in the game, and that this somehow requires a new trial, does not bear scrutiny.

¶ 34 The City's position in this litigation has been that it was not negligent to direct that the streetlights come on at dusk and go off at dawn, but that if the City's directives in this regard were foiled by any negligent maintenance by APS, responsibility for that negligent maintenance should be assigned to APS under comparative fault principles. The distinction between the responsibility the City accepted, and that which the City asserted APS should bear, clearly appears in the record of this case following the City's pretrial designation of APS as a non-party at fault. After plaintiff objected to the notice of non-party at fault on the basis of untimeliness,[5] the City explained that the designation would allow the jury to allocate responsibility to APS if, as Dr. Bleyl had opined in a deposition, the jury concluded that the photocell in the streetlight had not come on when it was supposed to. Plaintiff did not contend before trial that such an allocation of fault would be improper.

¶ 35 Not until mid-trial, in a trial memorandum, did plaintiff ever assert that fault could not be allocated to APS because of the City's non-delegable duty.

¶ 36 But defendant's position was consistent throughout: The City's decision to have the lights come on at dusk was not negligent; the light was probably on at the time of the accident but if the light did not come on at dusk as it was supposed to because of negligent maintenance, such negligence, if proved, was assignable to APS. If plaintiff failed to effectually counter this position, it was not due to sandbagging or surprise, as the City misled no one as to its position. And if it was only in final argument that the City first directly addressed its comparative fault argument to the jury, that was as it should be: A party *may not argue the evidence before final argument.*

¶ 37 The trial court did not base its new trial order on some notion that the City surprised everyone with a "final-argument suggestion" of APS's responsibility. We have no warrant to go beyond the reasons given by the trial court for ordering a new trial. "[O]ur review is limited to a consideration of the sufficiency of the grounds for the order, and to search the record for other possible bases not adopted by the trial court is unnecessary." *Harlan,* 75 Ariz. at 293, 255 P.2d at 611. The dissent cites *Buffa v. Scott,* 147 Ariz. 140, 142–44, 708 P.2d 1331, 1333–35 (App.1985) for the proposition that we should affirm where the trial court's reason for granting a new trial was legally erroneous but we can devise some other basis for requiring a new trial. *Buffa* does not support such a proposition. In *Buffa,* the trial court believed it had erred in precluding, on the basis of an asserted privilege, blood alcohol evidence indicating that the defendant was drunk when she collided with a vehicle being pushed by the plaintiff's decedent. 147 Ariz. at 141, 708 P.2d at 1332. The trial court decided that it should not have sustained the objection on the basis of privilege for several reasons, including a finding of waiver, a determination that invocation of the privilege under the circumstances did not serve the purposes of the privilege, and a conclusion that suppression of the evidence

---

5. The trial court ultimately rejected the untimeliness claim.

had been "unjust and unfair." *Id.* at 142, 708 P.2d at 1333. On appeal, we rejected the finding of waiver, but affirmed based on the other reasons given by the trial court, holding that the record supported the trial judge's determination that he had erred in suppressing the blood alcohol evidence. *See id.* at 143–44, 708 P.2d at 1334–35. In affirming, we did not look to any materials or arguments other than those relied upon by the trial judge in granting a new trial. *See id.*

¶ 38 In this case, the trial judge granted a new trial because he incorrectly concluded that he had erred in charging the jury. Because he had not erred, he had no legal discretion to order a new trial. *See Harlan,* 75 Ariz. at 293–94, 255 P.2d at 611–12. Therefore, we must reverse.

### B. Refusal To Instruct Jury Regarding Standard Of Care For Teenagers

¶ 39 In order to preserve an objection to an omitted jury instruction, a party must explicitly state such objection. Arizona Rule of Civil Procedure 51(a) states in part that:

> No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

¶ 40 Because defendant argued that Shonna was comparatively negligent during trial, plaintiff submitted the following instruction on the standard of conduct applicable to Shonna:

> A child is ordinarily required to exercise the same degree of caution and care which other children of like age, capacity and experience might be reasonably expected to use in the same situation and under like circumstances. (*Gilbert vs. Quinet,* 91 Ariz. 29, 369 P.2d 267 (1962) and Restatement (2d) of Torts § 283A).

The court did not give the requested instruction.

6. Fundamental error is error that "goes to the foundation of the case or which takes from a party a right essential to his case." *Long,* 131

¶ 41 In *Long v. Corvo,* plaintiff's counsel objected to a jury instruction before the jury retired but did not comply with Rule 51(a) due to his failure to distinctly state his objection and the grounds for it. 131 Ariz. 216, 217, 639 P.2d 1041, 1042 (App. 1981). The only specific objection he made was that a sudden emergency instruction was not supported by the evidence. *See id.* Such a general objection to a given instruction was insufficient to comply with Rule 51(a). *See id.* Thus, plaintiff's counsel was precluded from appealing the issue and likewise precluded from asserting that the alleged error was a ground for a new trial. *See id.* However, notwithstanding the insufficient objection, if the giving of that instruction constituted fundamental reversible error,[6] the order for a new trial could have been upheld. *See id.*

¶ 42 Here, plaintiff's counsel made no objection when the judge did not include the proposed instruction in the final jury instructions. Thus, because plaintiff's counsel did not object to the judge's failure to include the proposed instruction pursuant to Rule 51(a), the trial judge erred in granting plaintiff a new trial on this basis since plaintiff should have been precluded from arguing that the omission of the instruction was error. *See Long,* 131 Ariz. at 217, 639 P.2d at 1042.

¶ 43 Moreover, the failure to give this particular instruction does not constitute fundamental reversible error. The diminished capacity instruction does not go to the foundation of the case or take away a right essential to plaintiff's case. *See id.* The only function of such an instruction would be to detract from Shonna's potential contributory negligence based on her age, that she was not a licensed driver, and that she would have been unable to appreciate the dangerous conditions on the road the evening of the accident. However, there is evidence that Shonna was quite familiar with the intersection where the accident occurred, having used it at least twice per day.

Ariz. at 217, 639 P.2d at 1042 (citing *Johnson v. Elliott,* 112 Ariz. 57, 537 P.2d 927 (1975)).

¶ 44 Plaintiff argues that it is the court's duty to instruct the jury regarding the law on subjects at issue even in the absence of a request and that failing to do so constitutes fundamental and reversible error under *Patania v. Silverstone*, 3 Ariz.App. 424, 428, 415 P.2d 139, 143 (1966). While this may be a correct statement of the law, it does not help plaintiff's cause because the failure to instruct on diminished capacity does not constitute fundamental error in this case. *See Long*, 131 Ariz. at 217, 639 P.2d at 1042. Therefore, even if it was error for the trial judge to omit this instruction prior to the jury retiring, it was not fundamental reversible error.

¶ 45 Taking the evidence in the light most favorable to plaintiff, we reverse the trial judge's granting of a new trial based on his failure to instruct the jury on the diminished capacity of Shonna.

## II. PLAINTIFF'S CROSS–APPEAL BASED ON THE DISALLOWANCE OF EVIDENCE OF SUBSTANTIALLY SIMILAR ACCIDENTS AND MISCONDUCT OF DEFENSE COUNSEL

¶ 46 Plaintiff asserts that the trial court should have granted a new trial on two other, independent grounds. We will uphold the trial court's rejection of these two grounds for a new trial unless there was a clear abuse of discretion. *See Delbridge v. Salt River Project Agric. Improvement & Power Dist.*, 182 Ariz. 46, 53, 893 P.2d 46, 53 (App.1994) (citing *Suciu v. AMFAC Distrib. Corp.*, 138 Ariz. 514, 520, 675 P.2d 1333, 1339 (App. 1983)).

### A. Trial Court's Refusal To Admit Evidence Of Substantially Similar Accidents

¶ 47 "[E]vidence of other similar accidents at or near the place suffered by persons other than the plaintiff, at different times, not too remote in point of time, is admissible." *Slow Dev. Co. v. Coulter*, 88 Ariz. 122, 125, 353 P.2d 890, 892 (1960). However, before such evidence is admissible, a proper foundation must be laid, tending to

prove the existence of a defective or dangerous condition, knowledge or notice of the dangerous condition, or negligence in permitting it to continue. *See id.* The proffered evidence need not be probative in all of those respects, and it is admissible if it fairly raises an inference upon one phase of the case. *See id.* (quoting *Gilbert v. Pessin Grocery Co.*, 132 Cal.App.2d 212, 282 P.2d 148, 154 (1955)).

¶ 48 It must be shown that the conditions under which the previous accidents occurred were the same or substantially similar to the one in question in order to admit testimony regarding them. *See id.* at 125–26, 353 P.2d at 892. However, the accidents need not be shown to have occurred under precisely the same circumstances as those in the accident in question as long as they are similar in character. *See id.* at 126, 353 P.2d at 892 (citations omitted).

¶ 49 The prior accidents plaintiff sought to introduce in this case occurred on March 1, 1993 and May 6, 1993. Plaintiff hoped to use this evidence to show that defendant was on notice that there was a problem with the streetlighting at this intersection.

¶ 50 Plaintiff's offer of proof regarding the March 1, 1993 accident came in the form of an accident report as well as testimony from David Winant.[7] He testified that the accident on March 1, 1993 probably happened between 5:30 p.m. and 7:30 p.m. and that it was very dark. He also testified that the pedestrian was in the crosswalk in the lane closest to the curb, and that the vehicle that struck the pedestrian was travelling eastbound at approximately thirty miles per hour. Winant testified that he did not see the pedestrian until the instance of impact. However, on cross-examination, Winant admitted that when he gave a statement on November 9, 1994, he did not know whether the streetlight was on or off.

¶ 51 The trial judge made the point that testimony that defendant was on notice could come out through the testimony of Cynecki. Plaintiff argued that Cynecki did not actually witness any accidents, but rather knew of

---

7. The reporter's transcript incorrectly refers to this witness as David Bennett.

them through complaints made to the City regarding the lighting. In fact, defendant informed the trial judge that one of defendant's employees, Phil Lindsey, who was primarily in charge of lighting, lived around the corner on 34th Street and that anything that plaintiff wanted to charge defendant with in terms of notice was already known to defendant. Plaintiff later admitted in a conference with the trial judge and defense counsel that there were no witnesses who could testify that the light was not on at the May 6, 1993 accident but only that the circumstances were similar in that the prior accident occurred at the same time of night after the sun had set.

¶ 52 The trial judge ruled that since evidence of defendant's actual or constructive notice would come out through the testimony of Cynecki, evidence of the prior accidents would not be admissible. Furthermore, we do not even know whether the streetlight was on or off in the prior cases. Because it was within the trial judge's discretion to exclude evidence of these two prior accidents at trial, we will not disturb his finding. Therefore, we affirm the denial of a new trial based on the exclusion of the prior accidents because there was other evidence that the City was on notice.

**B. Trial Court's Refusal To Grant A New Trial Based On The Alleged Misconduct Of Defense Counsel**

¶ 53 A trial court has great discretion in controlling the conduct of a trial. *See Taylor v. DiRico,* 124 Ariz. 513, 518, 606 P.2d 3, 8 (1980). We will defer to the trial court's ruling on the alleged misconduct of counsel unless it is clear that the trial court abused its discretion. *See id.* (citing *Taylor v. Cate,* 117 Ariz. 367, 573 P.2d 58 (1977)). Absent an abuse of discretion resulting in a clear showing of prejudicial error, the trial court's ruling denying a new trial based on the alleged misconduct of counsel will not be disturbed on appeal. *See id.* (citing *Hales v. Pittman,* 118 Ariz. 305, 576 P.2d 493 (1978)).

¶ 54 Here, plaintiff moved for a new trial based on two statements elicited by defense counsel during the cross-examination of plaintiff. During discovery, it came out that she had given birth to another child. Plaintiff argued that this was prohibited collateral source evidence. Moreover, plaintiff asserted that this evidence was not relevant, and that under Arizona's wrongful death law, damages are fixed at the time of death such that any benefit plaintiff received due to the birth of the after-born child was an inadmissible collateral source benefit.

¶ 55 It was also discovered that plaintiff's boyfriend had died of AIDS prior to Shonna's death. Plaintiff sought to exclude this evidence due to the potential prejudicial effect on the jury because of the stigma associated with AIDS.

¶ 56 Defendant elicited these statements in an effort to show the jury that plaintiff had additional sources for her grief besides Shonna's death. Plaintiff filed a motion in limine regarding both of these statements. The court stated that it would take these matters under advisement and that no mention of these statements should be made until the court ruled. However, prior to receiving a ruling, defense counsel elicited the statements from plaintiff on cross-examination. Defense counsel stated that he misunderstood the court's earlier ruling. Plaintiff moved for a mistrial, and then moved to strike the testimony and requested that the jury be instructed to disregard the evidence when the court denied the motion for the mistrial. The court would not do so.

¶ 57 Although the trial judge had not yet ruled on the motion in limine, by allowing such statements to be elicited by defense counsel and then refusing to strike them afterward, the trial judge implicitly ruled that they were admissible. In fact, in chambers, the trial judge stated that the AIDS evidence was not unduly prejudicial and that it was probative. The fact that plaintiff's boyfriend died of AIDS had a bearing on her emotional state.

¶ 58 Although the trial court never had a chance to rule on the motion in limine before the statements were elicited, the statements did not cause prejudicial error. As the trial court determined, admission of the statement regarding plaintiff's after-born baby, offered as probative regarding the issue of mitigation

of damages, did not unfairly prejudice plaintiff, even assuming the jury got so far as to discuss damages. *See* Ariz. R. Evid. 403. Furthermore, the statement regarding plaintiff's boyfriend dying of AIDS is relevant because it is probative of plaintiff's emotional state and the fact that while no one would disagree that she was grief-stricken over Shonna's death, there were other factors in her life that contributed to her overall grief. Moreover, the judge stated on the record that this statement was not unduly prejudicial.

¶ 59 It was within the trial judge's discretion to refuse to strike these statements from the record and also to refuse to grant a new trial on that basis. Therefore, we find no error in the trial judge's refusal to grant a new trial based on the alleged misconduct of defense counsel.

## CONCLUSION

¶ 60 For the foregoing reasons, we reverse the trial judge's granting of a new trial based on the omission of plaintiff's requested jury instructions on vicarious liability and diminished capacity. Further, we conclude that the trial judge did not abuse his discretion in refusing to admit evidence of prior accidents or to grant a new trial based on the alleged misconduct of defense counsel.

CONCURRING: JEFFERSON L. LANKFORD, Judge.

NOYES, Chief Judge, Dissenting.

¶ 61 The applicable standard of review is deferential. "An order granting a new trial is subject to a more liberal standard of review than an order denying one. A reviewing court will not set aside a trial court's grant of new trial absent a clear showing of abuse of discretion." *Koepnick v. Sears Roebuck & Co.*, 158 Ariz. 322, 325, 762 P.2d 609, 612 (App.1988) (internal citations omitted).

¶ 62 The trial court gave many reasons for granting a new trial.[1] I strongly believe that

---

1. The trial court's reasons for granting a new trial included the following minute-entry explanation:

   **Alleged inconsistency of the non-delegable duty instruction and A.R.S. § 12–2506:**

   The general rule with respect to non-delegable duty is that "the employer's enterprise, and his relation to the plaintiff, are such as to impose upon him a **duty** which cannot be delegated to the contractor. The cases of non-delegable duty hold the employer liable for the negligence of the contractor, although he has himself done everything that could reasonably be required of him." **Prosser & Keeton on Torts**, 5th ed., § 71, p. 511. In other words, the employer is held vicariously liable for the negligence of its contractor. This concept is not inconsistent with Arizona's abolition of joint liability in favor of several only liability because vicarious liability goes to establishing a *duty* on the part of the defendant, while several liability is a means of apportioning damages. Therefore, if the City is found to be vicariously liable for the acts of Arizona Public Service (APS), the City figuratively "steps into the shoes" of APS. Thus, any damages assessed against the City would be based on vicarious liability, not joint liability.

   **Harmless error:**

   This court's failure to instruct the jury of the City's non-delegable duty is reversible error. The failure materially affected Plaintiffs' rights because it prevented Plaintiffs from arguing that the City was responsible for APS's failure to provide adequate lighting at the area of the accident. The test for the propriety of jury instructions is whether, upon the whole charge, the jury will gather the proper rules to be applied in arriving at the correct decision. *Kauffman v. Schroeder*, 116 Ariz. 104, 106, 568 P.2d 411 (1977). The jury was not told that the City, based on its non-delegable duty to maintain the streets in a safe condition, should be found liable if APS was found to be negligent. The jury was merely instructed: "If you find that defendant was at fault, then defendant is liable to plaintiff and your verdict must be for plaintiffs. ..." Thus, if the jury did not find Defendant independently liable, they were foreclosed from assigning liability to other parties, including APS.

   IT IS THEREFORE ORDERED denying Defendant's Motion to Reconsider Regarding Grant of New Trial.

   . . . .

   **Child standard of care:**

   Arizona has adopted the Restatement (Second) of Torts, which requires that a child's conduct conform to that of a "reasonable person of like age, intelligence, and experience under like circumstances." Restatement (Second) of Torts § 283A. **Also see**, RAJI (Civil) Negligence 5.

   In *Barnes v. City of Tucson*, 157 Ariz. 566, 760 P.2d 566 (App.1988), suit was brought on behalf of a 15 year old bicyclist who was injured when he collided with a post erected by the city on the edge of a city sidewalk. The Court of Appeals held that the trial court properly instructed the jury on the standard of care applicable to a child. Since Shonna Wiggs

the trial court's expressed conviction of the need for a new trial is owed more deference on review than it was given in the majority opinion.

¶ 63 I will focus on just one of the issues addressed by the trial court: The failure to instruct the jury on the City's non-delegable duty regarding the street light. Because the City conceded that it had a non-delegable duty regarding the street light, this appeared to be a non-issue, as far as the jury was concerned. In final argument, however, the City strongly suggested that it had delegated this duty to APS, by its contract with APS:

> Did APS do anything wrong? I don't know. But if you find that those lights were not on and they should have been, the City had an agreement with Arizona Public Service.

> And if they didn't come on, then Arizona Public Service is the one that had the photo cells in their control. And if it should have come on, then it is their responsibility.

> I'm going to suggest to you that nothing inappropriate was done at this intersection. But again, if you find they should have been on, then look at the contract, Exhibit 42.

¶ 64 As relevant here, the parties tried the case and the court instructed the jury as though liability hinged on whether the light was on or off when the child was killed, and as though the City was responsible if the light was off. The court's failure to instruct the jury on the City's non-delegable duty seriously hampered Plaintiff's ability to rebut the City's final-argument suggestion that only APS was responsible if the light was off.

¶ 65 For several reasons, some of which were contributed to by trial court rulings, the vicarious liability and comparative fault issues in this trial became quite confused. In my opinion, the record supports the conclusion that the end result of this confusion was an irregular proceeding that did not qualify as a fair trial. On such a record, we should

affirm the trial court's decision to grant a new trial. *See Buffa v. Scott,* 147 Ariz. 140, 142–44, 708 P.2d 1331, 1333–35 (App.1985) (affirming the grant of a new trial despite several errors in the court's stated reasons).

¶ 66 I respectfully dissent from this reversal.

---

was a 15 year old child at the time of the accident in the present case, an instruction on the child standard of care is appropriate.

IT IS THEREFORE ORDERED granting Plaintiff's Cross–Motion for Reconsidera-tion/for New Trial on this issue (jury instruction on the child standard of care).

(Emphasis in original.)