664 P.2d 652

**STATE of Arizona, Appellee,**

v.

**Margarito Moreno SANTEYAN, Appellant.**

**No. 5599–PR.**

Supreme Court of Arizona,
En Banc.

May 12, 1983.

Rehearing Denied June 14, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

H.K. Wilhelmsen, Prescott, for appellant.

HOLOHAN, Chief Justice.

Appellant was convicted of two counts of negligent homicide and one count of possession of a narcotic drug. He was sentenced to three concurrent ten-year terms of imprisonment.

The Court of Appeals affirmed the judgment and conviction in a memorandum de-cision. *State v. Santeyan,* 1 CA–CR 4851, filed March 18, 1982. We granted Appellant's petition for review to consider the admissibility of the testimony concerning the results of the urinalysis. We are satisfied and approve the decision of the Court of Appeals on all the other issues of the case including the affirmance of the conviction for possession of a narcotic drug.

The facts essential to resolution of the issue presented for review are that on September 9, 1979, Appellant, his ex-girlfriend, and their three-year-old son were in Appellant's car traveling from Prescott to Phoenix. Appellant was driving.

Appellant was observed to be driving in an erratic manner, moving back and forth across the center line of the highway. In the area known as Prescott Valley the Appellant drove off the right side of the road. He managed to return to the highway but then drove off the left side where the vehicle rolled down the bank. The crash killed Appellant's two passengers. Appellant was unconscious when police officer Sinanovic arrived at the scene of the accident. Officer Sinanovic searched Appellant for identification, discovering a foil packet in the process. The officer then opened the packet which contained a white powder resembling heroin.

Appellant was taken to the hospital and treated. During the course of that treatment, two routine urinalyses were done. None of the tests were done for, or at the request of, a law enforcement officer. The tests indicated the presence of opiates in Appellant's system.

Appellant was indicted on two counts of reckless manslaughter and one count of possession of a narcotic drug. After a trial by jury he was convicted of two counts of negligent homicide and one count of possession of a narcotic drug.

In the trial court the results of the urinalysis performed on the two urine specimens obtained from him during the course of his treatment in the hospital were admitted in evidence over the objection of the defense.

Appellant challenges the admission of the medical test results on several grounds.

We believe the only issue which merits our consideration is whether the results of the urinalyses were protected by the physician-patient privilege.

A.R.S. § 13–4062(4) provides:

A person shall not be examined as a witness in the following cases:

. . . . .

4. A physician or surgeon, without consent of his patient, as to any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient.

The privilege has as its primary function the protection of communications made by the patient to his physician for the purpose of treatment. *See State v. Shaw,* 106 Ariz. 103, 471 P.2d 715 (1970); *State v. Evans,* 104 Ariz. 434, 454 P.2d 976 (1969).

The state argues that the privilege is solely to protect from disclosure communications between the patient and his doctor. Thus, the privilege has nothing to do with physical tests such as an urinalysis. No authority is cited by the state except reference to the statute.

The statute providing for the doctor-patient privilege in civil actions, A.R.S. § 12–2235,[1] has not been limited to oral communications. The statutory privilege has been held to protect from disclosure hospital records containing information obtained from examination or testing of a patient. *Ziegler v. Superior Court,* 131 Ariz. 250, 640 P.2d 181 (1982); *Tucson Medical Center, Inc. v. Rowles,* 21 Ariz.App. 424, 520 P.2d 518 (1974). The results of the medical tests performed during the treatment of the defendant would not be admissible over his objection in a civil action. The language used in A.R.S. § 12–2235 is not significantly different from that used in A.R.S. § 13–4062(4), so it would appear that there is no sound reason why the legal interpretation of the statutes should be any different.

Several other jurisdictions follow the rule that the results of medical tests performed on a defendant for the purpose of diagnosis or treatment, and not at the request of a law enforcement officer or prosecutor, are privileged. *Ragsdale v. State,* 245 Ark. 296, 432 S.W.2d 11 (1968); *Alder v. State,* 239 Ind. 68, 154 N.E.2d 716 (1958); *State v. Rochelle,* 11 Wash.App. 887, 527 P.2d 87 (1974). See also *Branch v. Wilkinson,* 198 Neb. 649, 256 N.W.2d 307 (1977).

In light of the rule followed in this jurisdiction in civil actions under similar statutory language we see no sound reason to create a different rule for criminal cases. We, therefore, hold that the results of the two urinalyses performed during the treatment of the defendant were privileged and, absent his consent, were not admissible in the trial.

The results of the urinalyses were used to establish the elements in the two counts of negligent homicide. The results of the medical test were not used to support the charge of possession of narcotics because the defendant was shown to be in actual possession of a narcotic drug. The results of the medical tests added nothing to the possession case. The only defense offered was that the evidence was illegally seized. The negligent homicide charges were another matter. The medical tests were necessary to establish that the defendant was operating his vehicle in an erratic fashion due to drug ingestion. The conviction for negligent homicide must be reversed and the defendant granted a new trial on those charges. The conviction and sentence for illegal possession of a narcotic drug is affirmed.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

1. § 12–2235. *Doctor and patient*

In a civil action a physician or surgeon shall not, without the consent of his patient, or the conservator or guardian of the patient, be examined as to any communication made by his patient with reference to any physical or mental disease or disorder or supposed physical or mental disease or disorder or as to any such knowledge obtained by personal examination of the patient.