OPINION OF THE COURT
 

 Simons, J.
 

 Defendant has been convicted of several crimes, all based on evidence that he unlawfully obtained drug prescriptions from his dentists and physicians. He contends the judgment must be reversed because the evidence supporting them was privileged. The courts below held that the information was not privileged because of the exception contained in Public Health Law § 3373. We conclude that statute does not render the evidence admissible over defendant’s objection and therefore reverse and order a new trial.
 

 I
 

 Prior to his conviction on these charges, defendant was an officer in the Suffolk County Police Department. Between April 1990 and July 1992, he suffered major dental problems and a serious back condition. His treatment for these maladies included the use of drugs to relieve pain. In the spring of 1992, noting the number of insurance claims defendant had submitted for medicines, the Department’s Internal Affairs Bureau became suspicious that he was using drugs excessively. Accordingly, it initiated an investigation of defendant and, with the help of the Federal Drug Enforcement Administration, interviewed defendant’s physicians and dentists, obtained written statements from them and reviewed some of their records. Four dentists and three physicians were subsequently called to testify before the Grand Jury about their care and treatment of defendant and the medicines prescribed for his condition and some of defendant’s patient records were received in evidence.
 

 At the conclusion of the presentation, the Grand Jury charged defendant with (1) criminal possession of a forged instrument in the second degree (Penal Law § 170.25), a felony, based on his possession of a prescription for the pain medication Percodan Demi obtained from one of his dentists, on which the number of capsules prescribed was allegedly altered from 20 to 120, (2) falsifying a business record in the first degree (Penal Law § 175.10), a felony, based upon his causing a dental assistant to make an alleged false entry on defendant’s patient
 
 *491
 
 intake form stating that he was allergic to codeine in order to receive stronger pain medication, and (3) two counts of violating Public Health Law § 3397 (1) (a) (i) and § 3397 (4), misdemeanors, based on defendant obtaining a large number of prescriptions for narcotic pain medications from several of his treating practitioners by misrepresenting or concealing the amount of similar medications he was receiving from other treating practitioners during the same period.
 

 Defendant’s conviction of all four counts after trial was based upon similarly privileged communications. He was sentenced to six months in jail and five months probation on the felony counts and three years’ probation on the misdemeanor counts.
 

 The dispositive question presented is whether the exception to the physician-patient privilege contained in section 3373 of the Public Health Law extends to the investigation and criminal prosecution of defendant in this case.
 

 II
 

 The present physician-patient privilege is purely a legislative creation
 
 (Dillenbeck v Hess,
 
 73 NY2d 278, 283;
 
 Matter of Camperlengo v Blum,
 
 56 NY2d 251, 254). The statute prohibits physicians, dentists and other medical personnel from revealing "any information which [they] acquired in attending a patient in a professional capacity, and which was necessary to enable [them] to act in that capacity” (CPLR 4504 [a]). The rationale supporting it is that the protection of confidential information from involuntary disclosure will promote uninhibited communication between patient and physician for the purpose of obtaining appropriate medical treatment. In the succinct words of one commentator, the statute presumes that "privilege in the courtroom will encourage disclosure in the sickroom”
 
 (see,
 
 Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C4504:1, at 628 [1992]).
 

 The privilege is not absolute, however. The Legislature has enacted a number of narrow exceptions abrogating it for various public policy reasons
 
 (see, e.g.,
 
 CPLR 4504 [b] [respecting disclosure of dental identification data and information concerning a victim of crime under age 16];
 
 id.,
 
 4504 [c] [respecting information as to the mental or physical condition of a deceased patient]; Family Ct Act § 1046 [a] [vii] [no privilege in proceedings for child abuse or neglect]; Social Services Law § 384-b [3] [h] [providing that the privilege affords no ground for exclusion of evidence in proceedings for guardianship and
 
 *492
 
 custody of destitute or dependent children];
 
 id.,
 
 §§ 413, 415 [providing that cases of suspected child abuse or maltreatment must be reported in writing and that such reports are admissible in any proceedings relating to child abuse or maltreatment]; Mental Hygiene Law § 81.09 [d] [allowing for inspection of medical records of an alleged incapacitated person]; Public Health Law § 2101 [1] [requiring disclosure of communicable disease];
 
 id.,
 
 § 2785 [2] [providing that a court may grant an order for the disclosure of HIV-related information upon an application showing a "compelling need” in judicial proceedings]; Penal Law § 265.25 [making it a misdemeanor for a doctor or hospital to fail to report a wound "caused by discharge of a gun or firearm” or "a wound which is likely to or may result in death and is actually or apparently inflicted by a knife, ice pick or other sharp or pointed instrument”]). We have also implied an exception under the Narcotics Control Act to further narcotics treatment designed to benefit the patient
 
 (see, People v Fuller, 24
 
 NY2d 292).
 

 Notwithstanding these many exceptions, we have frequently stated that the physician-patient privilege is to be given a " 'broad and liberal construction to carry out its policy’ ”
 
 (Matter of Grand Jury Investigation,
 
 59 NY2d 130, 134, citing
 
 Matter of City Council v Goldwater,
 
 284 NY 296, 300; and
 
 People v Decina, 2
 
 NY2d 133). Accordingly, we have narrowly construed statutes limiting the privilege and rejected claims that there is a general public interest exception to CPLR 4504
 
 (Matter of Grand Jury Investigation, supra,
 
 at 135;
 
 and see, People v Decina, supra; People v Murphy,
 
 101 NY 126;
 
 cf., Matter of Camperlengo v Blum,
 
 56 NY2d 251,
 
 supra).
 

 The People maintain that section 3373 of the Public Health Law contains an exception to the physician-patient privilege and that properly interpreted, it applies in this case. The section provides:
 

 "Confidential communications”
 

 "For the purposes of duties arising out of this article, no communication made to a practitioner shall be deemed confidential within the meaning of the civil practice law and rules relating to confidential communications between such practitioner and patient.”
 

 The only relevant duties imposed on practitioners by article 33 of the Public Health Law are found in sections 3372 and 3374. Section 3372 requires practitioners to report promptly
 
 *493
 
 "to the commissioner [of Health] or his duly designated agent” the name, address and other data required by the Commissioner of any person under treatment who is a suspected addict or habitual user of any narcotic drug. Such reports are, by statute, confidential and to be used only for statistical, epidemiological or research purposes. Section 3374 provides that article 33 licensees shall "promptly notify the department” of possible diversion or theft of controlled substances. The issue is whether an exception to the privilege can be implied from these sections which authorizes treating physicians to release confidential information to police authorities for criminal proceedings absent judicial process
 
 (see,
 
 Public Health Law § 3371 [1] [b]).
 

 Article 33 of the Public Health Law was enacted in 1972. It is a recodification of prior articles 33, 33-A and 33-B recommended by the Temporary State Commission to Evaluate Drug Laws and is designed to prevent the diversion into illicit channels of potent medicinal drugs from the lawful stream of distribution. It generally complements the Federal Uniform Controlled Substance Act
 
 (see,
 
 Bill Jacket, L 1972, ch 878, Legis Mem, at 73).
 

 One of the important purposes of article 33 is addressed in title VI. It provides for the maintenance of records and includes requirements for preparing prescriptions and reporting of drug addicts and habitual drug users to the Department of Public Health for the limited purposes set forth in section 3372. Title VI reenacted many of the prior provisions dealing with reports and records but in adopting it, the Legislature undertook to provide "additional safeguards” to ensure patient confidentiality so that the medical aspects of drug abuse could receive increased attention
 
 (see,
 
 Bill Jacket, L 1972, ch 878, Legis Mem, at 75, 77). To that end, the statute, as enacted, more narrowly defined the exception to confidentiality. When first enacted in 1953, it had provided that "For the purposes of this article” no communications would be deemed confidential (Public Health Law former § 3304 [2], L 1953, ch 879, § 1, repealed by L 1972, ch 878, § 1). In the 1972 recodification, however, the Legislature provided that "For the purposes of
 
 duties arising out
 
 of this article, no communication made to a practitioner shall be deemed confidential” (Public Health Law § 3373, L 1972, ch 878, § 2 [emphasis added]). Thus, the Legislature narrowed the exception to remove confidentiality for the limited purpose of permitting practitioners to submit the reports required by the statute.
 

 
 *494
 
 The legislative intent to maintain patient confidentiality is also demonstrated by the limits the Legislature placed on access to patient information once reports are received by the department. Originally, the statute provided that reports and records could be released to any person "who by virtue of his office is entitled to obtain such information” (Public Health Law § 3371 [1] [a], L 1972, ch 878, § 2). In 1974, however, the Legislature, to "further tighten! ] the confidentiality protections afforded to patients receiving controlled substances” (Bill Jacket, L 1974, ch 965, Legis Mem, at 4), amended section 3371 to substitute the present language restricting disclosure to "another person employed by the department, for purposes of executing provisions of this article” (Public Health Law § 3371 [1] [a], as amended by L 1974, ch 965, § 17). The 1974 amendment also limited access to centralized computer data and added a provision authorizing destruction of the data after five years to protect patient confidentiality (Public Health Law § 3370, as amended by L 1974, ch 965, § 16;
 
 see,
 
 Bill Jacket, L 1974, ch 965, Legis Mem, at 6-7).
 

 Thus, the disposition of the Legislature since 1972 has been to narrow the statutory exception allowing disclosure of confidential communications, not to expand it. The People’s suggestion that the Legislature intended section 3373 to generally abrogate the physician-patient privilege for the purpose of criminal prosecution is not only contrary to the rationale behind the physician-patient privilege — to encourage complete candor in order to secure appropriate treatment — but it is also contradicted by the language of the statute and the Legislature’s demonstrated concern over confidentiality in this area.
 

 The People maintain on appeal that absent a crime fraud exception to the privilege, it will be impossible to prosecute one who consults a doctor solely to obtain drugs in violation of the fraud and deceit provisions contained in Public Health Law § 3397. Noting that we have interpreted section 3373 broadly in the past
 
 (see, Matter of Camperlengo v Blum, supra),
 
 they urge us to do so here.
 

 The short answer to the People’s argument is that they did not try the case on the theory that defendant visited doctors solely to obtain drugs; they have never disputed the existence of his medical complaints or his need to obtain palliative drugs to mitigate his pain. Moreover, the
 
 Camperlengo
 
 case is clearly distinguishable. It involved charges of unlawful billing by a Medicaid provider. During an investigation by the Department of Social Services, the provider sought to quash office subpoenas
 
 *495
 
 seeking patient records. He maintained that the records and the patients’ treatment were privileged. We found an implicit exception to the physician-patient privilege, however, contained in the statutory provisions mandating extensive reporting and recordkeeping for Medicaid recipients. There is nothing similar in article 33 to sustain the claim that in enacting the statute the Legislature intended to override the physician-patient privilege contained in CPLR 4504 and make confidential information generally available to law enforcement agencies in drug cases.
 

 We conclude, therefore, that any communications between defendant and his doctors in furtherance of his treatment were obtained in violation of defendant’s physician-patient privilege and improperly admitted at trial.
 

 Finally, defendant contends that the indictment must be dismissed because the Grand Jury proceedings failed to conform to the requirements of CPL article 190 "to such a degree that the integrity thereof [was] impaired”
 
 (see,
 
 CPL 210.35 [5]). The Grand Jury proceedings were defective, he asserts, because the police and prosecutors used intimidation and coercion to obtain privileged information from his doctors. He moved before trial for a hearing to establish that misconduct.
 

 Defendant’s allegations, even if established after a hearing, demonstrated no more than that the police and prosecutor mistakenly interpreted the law respecting confidential communications and the breadth of the exception contained in the Public Health Law. The Peopled position throughout these proceedings that the evidence was not privileged was not only colorable, it was sustained by the trial court and the Appellate Division. Thus, we find no basis to conclude that the use of such evidence, even though its reception violated defendant’s right to confidentiality, required dismissal under CPL 210.35 (5).
 

 Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
 

 Chief Judge Kaye and Judges Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order reversed, etc.