26 P.3d 1161

The STATE of Arizona, Appellant,

v.

Thomas Harold WILSON, Appellee.

No. 2 CA–CR 00–0054.

Court of Appeals of Arizona,
Division Two, Department A.

May 31, 2001.

As Corrected June 18, 2001.

Barbara LaWall, Pima County Attorney, By Elizabeth Tyszko, Tucson, for Appellant.

Hirsh, Bjorgaard & Rogers, P.L.C., By Jeffrey J. Rogers, Tucson, for Appellee.

## OPINION

PELANDER, J.

¶ 1 After having this case against defendant/appellee Thomas Wilson dismissed without prejudice, the state appeals from the trial court's prior ruling, based on the physician-patient privilege (the privilege), that excluded evidence the state deems critical. We affirm.

## BACKGROUND

¶ 2 The state charged Wilson with fraudulent scheme and artifice and theft by misrepresentation for allegedly having filed and pursued a fraudulent claim for workers' compensation benefits against the City of Tucson during his employment with the Tucson Police Department. The indictment was based largely on alleged discrepancies between Wilson's complaints to physicians of certain physical limitations and various activities in which Wilson engaged, as depicted in surveillance videotapes obtained by the City. The state filed a motion for a ruling relating to Wilson's assertion of the privilege, contending the privilege did not preclude testimony from five physicians who had "treated [Wilson] as part of his Workers' Compensation

claim." The trial court largely denied the motion, precluding the state from calling all but one physician, Dr. Krasner, who, the state claimed, had seen Wilson for an independent medical examination (IME) rather than as a treating physician.

¶ 3 Wilson subsequently moved for reconsideration of the ruling relating to Krasner and for an in limine ruling that, even if he theoretically could have waived the privilege as to that physician, the facts did not support a finding of waiver here. After a hearing at which counsel argued, introduced several exhibits, and made certain avowals, the trial court ruled in Wilson's favor, stating it could not find "a waiver of the doctor-patient privilege from the evidence presented." This appeal followed the trial court's denial of the state's motion for reconsideration and dismissal of the case without prejudice on the state's motion.

## DISCUSSION

¶ 4 The state only challenges the trial court's preclusion of Krasner's testimony,[1] arguing that the privilege does not apply to him or, alternatively, that Wilson impliedly waived the privilege. The question of whether a privilege exists is generally a legal question that is subject to our de novo review. *See, e.g., State v. Santeyan,* 136 Ariz. 108, 664 P.2d 652 (1983); *Blazek v. Superior Court,* 177 Ariz. 535, 537, 869 P.2d 509, 511 (App.1994); *cf. State Farm Mut. Auto. Ins. Co. v. Lee,* 199 Ariz. 52, ¶ 12, 13 P.3d 1169, ¶ 12 (2000) (although trial court has broad discretion in ruling on a party's assertion of privilege, that discretion does not permit misapplication of law or a ruling predicated on irrational bases). We also review de novo the question of whether a party has waived a privilege, *Home Indemnity Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1326 (9th Cir.1995), unless that question hinges on resolution of conflicting facts or witness credibility issues. *Cf. State v. Steelman,* 120 Ariz. 301, 317, 585 P.2d 1213, 1229 (1978). Finally, to the extent the state's argument requires interpretation of statutes, we review such

issues de novo. *State v. Leon,* 197 Ariz. 48, ¶ 2, 3 P.3d 968, ¶ 2 (App.1999).

¶ 5 Section 13–4062(4), A.R.S., provides that a physician or surgeon shall not be examined as a witness "without consent of the physician's or surgeon's patient, as to any information acquired in attending the patient which was necessary to enable the physician or surgeon to prescribe or act for the patient." "Because there was no such privilege at common law, the statute must be strictly construed." *State v. Morales,* 170 Ariz. 360, 363, 824 P.2d 756, 759 (App.1991). The privilege is primarily intended to protect "communications made by the patient to his physician for the purpose of treatment," *Santeyan,* 136 Ariz. at 110, 664 P.2d at 654, so as "to insure that the patient will receive the best medical treatment by encouraging full and frank disclosure of medical history and symptoms by a patient to his doctor." *Lewin v. Jackson,* 108 Ariz. 27, 31, 492 P.2d 406, 410 (1972).

¶ 6 For the privilege to apply, four elements must exist: (1) the patient must not consent to the proffered testimony; (2) the witness must be a physician or surgeon; (3) the information must have been imparted while the physician was attending the defendant; and (4) " 'the information must be necessary to enable the physician to prescribe or act for the treatment of the defendant.' " *Morales,* 170 Ariz. at 363, 824 P.2d at 759, *quoting State v. Beaty,* 158 Ariz. 232, 239, 762 P.2d 519, 526 (1988). Only the fourth element is at issue here.

## I. Does Alleged Purpose of Visiting Physician Render Privilege Inapplicable?

¶ 7 The state first asserts generally that the privilege does not preclude Krasner's testimony because Wilson did not consult or communicate with him "for the purpose of treatment because there was no injury to treat." Rather, the state argues, Wilson visited all the doctors "for the purpose of pecuniary gain," through the filing and pursuing of "a false Worker's Compen-

---

1. Although the state's opening brief purportedly challenges the trial court's preclusion of testimony as to all five physicians whom the state had sought to use at trial, the state concedes in its reply brief that "it did not appeal from the preclusion of any of the doctors but Dr. Krasner."

sation claim." We do not find these arguments persuasive.

¶ 8 Even if a patient has an underlying financial motive or goal in seeking treatment, that does not necessarily mean information divulged by the patient is not "necessary to enable the physician ... to prescribe or act for the patient." § 13–4062(4). That is to say, a patient may trigger the privilege by consulting with a physician even though the patient has ulterior motives in seeking or obtaining treatment. *See People v. Sinski,* 88 N.Y.2d 487, 646 N.Y.S.2d 651, 669 N.E.2d 809, 813 (1996) ("any communications between defendant and his doctors in furtherance of his treatment were obtained in violation of defendant's physician-patient privilege and improperly admitted at trial," despite charge that defendant had obtained prescriptions for narcotic pain medications by fraud and deceit).

¶ 9 Moreover, the state's argument rests on the premise that Wilson committed workers' compensation fraud, a charge that, as yet, is unproven. In essence, the state's position begs the question by implicitly assuming that Wilson's consultation with Krasner and the other physicians constituted fraud.[2] That assumption, however, cannot justify disregarding the privilege in order for the state, in bootstrap fashion, to obtain evidence it allegedly needs to prove that the assumption is accurate. In the absence of any supporting authority, we reject as overbroad the state's apparent contention that public policy automatically justifies an abrogation of the privilege whenever a patient merely has been charged with fraud in making or pursuing a workers' compensation claim. *See Mutual of Omaha Ins. Co. v. American Nat'l Bank & Trust Co.,* 610 F.Supp. 546 (D.Minn.1985) (privilege applied

to bar psychiatrist records that insurance company sought in order to prove fraudulent scheme to procure insurance policies); *Sinski; cf. State v. Elwell,* 132 N.H. 599, 567 A.2d 1002, 1007 (1989) ("A criminal defendant does not put his medical condition at issue simply by proclaiming his innocence. To hold otherwise would allow the State to defeat the physician-patient privilege simply by accusing a defendant of a crime. We do not believe the legislature intended that result.").

¶ 10 Citing *Benton v. Superior Court,* 182 Ariz. 466, 897 P.2d 1352 (App.1994), the state contends "[t]he public's interest in protecting victims outweighs the privacy interest protected by the privilege." Although we do not necessarily disagree with that general proposition or its application in *Benton,* it does not justify elimination of Wilson's privilege here. In *Benton,* an uncooperative victim/witness of a domestic violence incident attempted to preclude the state from obtaining her medical records in its case against the defendant/abuser, who was charged with aggravated assault and burglary. Division One of this court held that "the State may, without the permission of a victim, obtain the victim's medical records when such records are needed for the prosecution of a criminal case." *Id.* at 467, 897 P.2d at 1353. Unlike this case, *Benton* involved unique concerns peculiar to domestic violence cases, in which "it is not unusual that a victim does not wish to cooperate with the prosecution." *Id.* at 469, 897 P.2d at 1355. More importantly, *Benton* addressed the *victim's* privilege, not the defendant's. *See State v. Antill,* 176 Ohio St. 61, 197 N.E.2d 548, 551–52 (1964) (physician's testimony as to shooting victim's condition not barred by privilege in criminal trial).

¶ 11 As the court in *Benton* noted, "the physician-patient privilege has never

**2.** The state relies primarily on the grand jury transcript to support its fraud claim. That transcript, however, is replete with hearsay evidence, and, of course, is hearsay itself. *See* Ariz. R. Evid. 801(c), 802, 17A A.R.S. *Compare State v. Fodor,* 179 Ariz. 442, 454–55, 880 P.2d 662, 674–75 (App.1994) (grand jury transcripts admissible in perjury trial because "not admitted for the truth of their contents"). Thus, the state may not use or rely on that transcript in this case, in which the charges against Wilson are unrelated

to the grand jury proceedings. We also note that the state's opening brief improperly cites to the September 1998 grand jury transcript, even though the trial court, on Wilson's motion, later remanded the case to the grand jury for a new probable cause determination. Finally, the surveillance videotapes to which the state refers are not part of the record on appeal, nor does the record reflect that those tapes were offered as exhibits in the trial court or otherwise viewed or considered by that court.

been absolute." 182 Ariz. at 469, 897 P.2d at 1355. In addition to the legislature's creation of various statutory exceptions,[3] "[t]he judiciary has also imposed some limitations" on that privilege, *id.;* and Arizona courts have recognized a "crime-fraud exception to the attorney-client privilege." *Id.* at 470, 897 P.2d at 1356. *See also Pearce v. Stone,* 149 Ariz. 567, 572, 720 P.2d 542, 547 (App.1986) ("[T]he attorney-client privilege is defeated by a showing of prima facie fraud on the part of the client."); *Buell v. Superior Court,* 96 Ariz. 62, 68, 391 P.2d 919, 924 (1964); *State v. Fodor,* 179 Ariz. 442, 450, 880 P.2d 662, 670 (App.1994). But, neither our legislature nor supreme court has created or recognized any "crime-fraud exception" to the physician-patient privilege, particularly when a criminal defendant is asserting the privilege. The state's mere charge of fraud against Wilson and its alleged need for the otherwise privileged evidence at issue, in our view, do not justify abrogating the privilege or broadly engrafting a common law "crime-fraud exception" to the privilege in this particular context. *See Mutual of Omaha; Sinski; People v. Childs,* 243 Mich.App. 360, 622 N.W.2d 90, 95 (2000) (rejecting state's argument that privilege must be abrogated "in all cases where a prosecutor advances a claim of need for a specific piece of evidence in order to pursue a criminal prosecution"); *cf. Fodor,* 179 Ariz. at 449–50, 880 P.2d at 669–70 (rejecting "the state's argument that a conversation protected by the attorney-client privilege may nevertheless be used to convict a criminal defendant of perjury").

¶ 12 The state's public policy argument, though somewhat appealing, could be made in many criminal actions in which proof of a defendant's medical condition allegedly is critical to the state's case. For example, one could argue that the public's interest in keeping drunk drivers off the roadways should outweigh a defendant's ability to protect from disclosure medical records that document the defendant had been impaired while driving. Because our supreme court implicitly has rejected that proposition, and because our legislature has not abrogated the privilege in such a sweeping manner, we are not inclined to do so. *See Santeyan,* 136 Ariz. at 110, 664 P.2d at 654 (privilege extended to defendant charged with negligent homicide for having driven under the influence of narcotic drug and required exclusion of results of two urinalysis drug tests performed during treatment of defendant). *See also Elwell,* 567 A.2d at 1006–07 (privilege prevented use of evidence obtained from driver's blood sample in prosecution for negligent homicide). In view of the extensive Arizona statutory scheme relating to the physician-patient privilege and the significant policy considerations that may influence the creation of any exceptions thereto, it is the legislature's prerogative, not this court's, to establish any appropriate "crime-fraud exception" to the privilege.[4]

¶ 13 Finally, because our legislature has established a physician-patient privilege, we find unpersuasive the state's contention that "[f]our conditions must be met before a privilege can be legally recognized." *See Ulibarri v. Superior Court,* 184 Ariz. 382, 389, 909 P.2d 449, 456 (App.1995) (upholding marital privilege despite fact that one of the four

---

**3.** *See, e.g.,* A.R.S. §§ 8–805(B) (privilege "shall not pertain in any civil or criminal litigation in which a child's neglect, dependency, abuse or abandonment is in issue"); 13–3412(C) (excepting from privilege communications made in unlawful effort to obtain drugs); 13–3620(A), (G) (any physician having reasonable grounds to believe that a minor is or has been the victim of injury, sexual abuse or misconduct, molestation, physical neglect, or other unlawful activities shall immediately report such information to a peace officer or child protective services; privilege not applicable to proceedings in which a child's neglect, dependency, abuse or abandonment is in issue); 36–2302(B) (privilege "shall not prevent the production of documents or records relevant to an investigation" relating to

experimentation on human fetus or embryo); 46–453(A) (privilege "shall not pertain in any civil or criminal litigation in which an incapacitated or vulnerable adult's exploitation, abuse or neglect is an issue").

**4.** At least one state legislature has done so. *See* Cal. Evid.Code § 997 (West 2001) ("There is no privilege under this article if the services of the physician were sought or obtained to enable or aid anyone to commit or plan to commit a crime or a tort or to escape detection or apprehension after the commission of a crime or a tort."). We also note, however, that California extends "no privilege ... in a criminal proceeding." *Id.* § 998.

conditions, that injury from disclosure outweigh benefit gained by disposal of litigation, was "most seriously tested in [that] case" because to do otherwise would erode confidence in the recognized privilege). *See also* 8 John H. Wigmore, *Evidence* § 2285, at 527 (John T. McNaughton rev.1961) (four conditions "are present in most of the recognized privileges"). We assume our legislature considered and accounted for the various policy concerns that underlie the four conditions when it codified the privilege in § 13–4062. *See Samaritan Health Svcs. v. City of Glendale,* 148 Ariz. 394, 397, 714 P.2d 887, 890 (App.1986) ("numerous [statutory] inroads . . . on the privilege" reflect that "the legislature has found certain societal interests sufficiently important to override the state's general interest in protecting confidential patient information from disclosure to third parties").

 ¶ 14 As the Michigan appellate court aptly stated:

> [W]e do not begin our statutory analysis by examining the general "purpose" of a statute and then determining whether public policy concerns support application of the statute in particular factual circumstances. We must begin by examining the actual language of the statute. If that language is unambiguous, we must apply the statute as written.

*Childs,* 622 N.W.2d at 93. Following that approach, we conclude that Wilson's communications to Krasner are privileged under § 13–4062(4).

## II. Implied Waiver or Statutory Abrogation of Privilege

 ¶ 15 The state next contends Wilson impliedly waived any privilege he may have had merely by filing a claim for workers' compensation benefits. The state, however, did not establish the traditional requirements for implied waiver, and the cases on which the state relies do not support its position. *See Bain v. Superior Court,* 148 Ariz. 331, 334, 714 P.2d 824, 827 (1986) (implied waiver occurs when "a privilege holder (1) offers himself as a witness and voluntarily testifies with reference to privileged communications concerning the condition, . . . or (2) places a

particular medical condition at issue by means of a claim or affirmative defense"). *See also Throop v. F.E. Young & Co.,* 94 Ariz. 146, 157–58, 382 P.2d 560, 567–68 (1963) (privilege impliedly waived when party defended by denying negligence and claiming sudden heart attack as cause of automobile accident); *cf. Alexander v. Superior Court,* 141 Ariz. 157, 163, 685 P.2d 1309, 1315 (1984) (when client does not treat information divulged to counsel "as if it were privileged," for example, by "testif[ying] to the information in an affidavit, which has become a matter of public record," any attorney-client privilege is "implicitly waived" as to that information).

 ¶ 16 In the course of litigation, a party may not use the privilege as "'both a sword and a shield,'" for example, by asserting a particular factual position and then invoking the privilege not only to "buttress such a position" but also to prevent the opposing party from impeaching or otherwise challenging it. *Throop,* 94 Ariz. at 157–58, 382 P.2d at 567–68, *quoting* Wigmore, *supra,* § 2388, at 855. *See also State Farm,* 199 Ariz. 52, ¶¶ 9, 18, 13 P.3d 1169, ¶¶ 9, 18; *Ulibarri,* 184 Ariz. at 385, 909 P.2d at 452; *Buffa v. Scott,* 147 Ariz. 140, 708 P.2d 1331 (App.1985). That is to say, "waiver can be implied when a party injects a matter that, in the context of the case, creates such a need for the opponent to obtain the information allegedly protected by the privilege that it would be unfair to allow that party to assert the privilege." *State Farm,* 199 Ariz. 52, ¶ 23, 13 P.3d 1169, ¶ 23.

¶ 17 This case, however, does not present such a scenario in which implied waiver must be found. Unlike the defendant in *State v. Tallabas,* 155 Ariz. 321, 323–24, 746 P.2d 491, 493–94 (App.1987), on which the state also relies, the state, not Wilson, sought to call Krasner as a witness and placed Wilson's medical condition at issue in this case. *Cf. State v. Turrentine,* 152 Ariz. 61, 66, 730 P.2d 238, 243 (App.1986) (by raising issue of sanity and calling physicians to testify, defendant "necessarily opened the door to statements he had made to the physicians"). And, unlike the privilege holder in *Ulibarri,* Wilson did not threaten a third party with his physi-

cian-patient communications and then invoke the privilege. 184 Ariz. at 384–85, 909 P.2d at 451–52. Finally, in the workers' compensation case, let alone in this criminal action, Wilson did not testify about or otherwise publicly disclose the substance of his conversation with Krasner or, for that matter, with any other physician.

¶ 18 That Wilson pursued a workers' compensation claim and "did not pay for [his] medical exams himself," as the state argues, does not, in and of itself, mean he waived his privilege. *Cf. State ex rel. Maloney v. Allen*, 26 S.W.3d 244, 247 (Mo.Ct.App.2000) (filing of workers' compensation claim does not result in unlimited modification or waiver of privilege). Similarly, that Wilson may have impliedly waived the privilege in his workers' compensation case as to any particular medical conditions claimed therein does not compel the conclusion that he likewise "pursue[d] a course of conduct inconsistent with observance of the privilege" in this criminal case. *Bain*, 148 Ariz. at 334, 714 P.2d at 827. Contrary to the state's contention, Wilson's filing of a workers' compensation claim does not necessarily negate an intent to keep his conversation with Krasner private or confidential outside the context of the workers' compensation case.

¶ 19 The state also contends A.R.S. § 23–908(C) "expressly negates any claim of doctor/patient privilege when an individual files a Worker's Compensation claim." That statute provides in pertinent part:

> Notwithstanding [A.R.S.] § 12–2235, information obtained by any physician or surgeon examining or treating an injured person shall not be considered a privileged communication, if such information is requested by interested parties for a proper understanding of the case and a determination of the rights involved.... Medical information from any source pertaining to conditions unrelated to the pending industrial claim shall remain privileged.

As the state correctly points out, although the introductory language of § 23–908(C) only refers to § 12–2235, the physician-patient privilege that applies to civil actions,[5] that does not necessarily mean § 23–908(C) is irrelevant and inapplicable to criminal cases. Because the language of § 12–2235 "is not significantly different from" § 13–4062(4), "there is no sound reason why the legal interpretation of the statutes should be any different." *Santeyan*, 136 Ariz. at 110, 664 P.2d at 654.

¶ 20 The similarity between § 12–2235 and § 13–4062(4), however, does not support the state's argument that § 23–908(C) abrogates the privilege here. In interpreting § 23–908(C), we seek to give effect to the plain and obvious meaning of its terms. *See State v. Jones*, 188 Ariz. 388, 392, 937 P.2d 310, 314 (1997). We also read the statute as a whole in order to give meaningful operation to each provision and avoid rendering any of its language superfluous. *Herman v. City of Tucson*, 197 Ariz. 430, ¶ 14, 4 P.3d 973, ¶ 14 (App.1999). When a statutory scheme expressly defines certain terms, we are bound by those definitions in construing a statute within that scheme. *Id.*

¶ 21 By its terms and its placement in Title 23, A.R.S., § 23–908(C) only affects the privilege in workers' compensation cases, not in other civil actions or criminal cases such as this. Moreover, § 23–908(C) removes certain information from the category of "privileged communication[s]" only if several qualifying conditions are met. For example, the information must be "requested by interested parties for a proper understanding of the case and a determination of the rights involved." § 23–908(C). For purposes of the workers' compensation chapter, A.R.S. §§ 23–901 through 23–1091, " '[i]nterested party' means the employer, the employee, or if the employee is deceased, the surviving spouse or dependents, the [industrial] commission, the insurance carrier or their representative." § 23–901(9). That statutory defi-

---

5. Section 12–2235, A.R.S., provides in pertinent part:
 In a civil action a physician or surgeon shall not, without the consent of his patient, ... be examined as to any communication made by his patient with reference to any physical or mental disease or disorder or supposed physical or mental disease or disorder or as to any such knowledge obtained by personal examination of the patient.

nition does not include the state or any other prosecutorial agency. The state neither fits within any of the definitional categories nor suggests that it represents the City or any other "interested party."

¶ 22 Moreover, the state does not argue or even address whether its desire to use Krasner's testimony equates to the limited purpose for which information may be requested, and is thereby rendered nonprivileged, pursuant to § 23–908(C): "a proper understanding of the case and a determination of the rights involved." In our view, those purposes refer and relate only to the workers' compensation "case" and "the rights involved" therein. That otherwise privileged information may aid the state to "proper[ly] understand[ ]" and prove this criminal case does not abrogate Wilson's privilege under § 13–4062(4) as to Krasner's proffered testimony.

■ ¶ 23 The state's reliance on § 23–908(A) and (D) also is misplaced. Subsection (A) requires a physician to file with the industrial commission and the employer's insurance carrier "a full and complete report of every known injury to the employee arising out of or in the course of his employment and resulting in loss of life or injury." Subsection (D) requires a physician "employed by the injured employee [to] forthwith report the accident and the injury resulting therefrom to the employer, the insurance carrier and the commission." Those statutes neither require a physician to report potential criminal activity nor expressly waive any privilege, particularly for purposes of criminal investigation or trial. That a physician must report accidents and injuries does not result in a total abrogation or general waiver of the privilege as to other information the physician might obtain from the patient. *Cf. In re Search Warrant for 2045 Franklin, Denver, Colorado,* 709 P.2d 597, 601 (Colo.Ct.App. 1985) (patients enrolling in Medicaid program impliedly waive physician-patient privilege only "to the extent necessary for the state to verify the services billed by the provider").

■ ¶ 24 For the first time at oral argument, without citing any pertinent authority, the state contended that Wilson's filing of a claim for workers' compensation benefits eviscerated the privilege because all records and reports compiled in connection with that claim are "public" records and, at a minimum, must be available for prosecuting a charge under § 23–1028.[6] *See generally* A.R.S. §§ 39–121 through 39–121.03; *Carlson v. Pima County,* 141 Ariz. 487, 687 P.2d 1242 (1984). We reject that belated argument on procedural and substantive grounds. First, the state waived this issue by failing to present it either in the trial court or in its appellate briefs. *See Van Loan v. Van Loan,* 116 Ariz. 272, 274, 569 P.2d 214, 216 (1977); *Johnson v. Hispanic Broadcasters of Tucson, Inc.,* 196 Ariz. 597, ¶ 8, 2 P.3d 687, ¶ 8 (App.2000).

■ ¶ 25 Second, not all Industrial Commission claims files are deemed public records, accessible to anyone for inspection or copying for any purpose. Although "the records of the Industrial Commission's proceedings, orders and awards" are considered "public records," "information which is not collected to serve as a memorial of an official transaction or for the dissemination of information is private except as to a claimant or parties." *Industrial Comm'n v. Holohan,* 97 Ariz. 122, 126, 397 P.2d 624, 627 (1964). *See also Salt River Pima–Maricopa Indian*

---

6. Section 23–1028(A), A.R.S., provides:
 If in order to obtain any compensation, benefit or payment under the provisions of this chapter, either for himself or for another, any person knowingly makes a false statement or representation, such person is guilty of a class 6 felony, and, if the person is a claimant for compensation, benefit or payment, he shall in addition forfeit all right to such compensation, benefit or payment after conviction of the offense.
 For purposes of that section, " 'statement' includes any notice, proof of injury, bill for services, payment for services, hospital or doctor records, x-rays, test reports, medical or legal expenses, or other evidence of loss or injury, or other expense or payment." § 23–1028(D). That the legislature created an offense specifically related to workers' compensation claims does not mean it intended that all such documents be deemed public or nonprivileged merely because a person has been charged with violating the statute. Moreover, the state neither charged Wilson with violating § 23–1028 nor cited that section below or in its appellate briefs.

*Community v. Rogers,* 168 Ariz. 531, 538, 815 P.2d 900, 907 (1991) ("[T]he mere fact that a writing is in the possession of a public officer or public agency does not make it a public record."); *Kirkpatrick v. Industrial Comm'n,* 10 Ariz.App. 564, 569, 460 P.2d 670, 675 (1969) ("documents in a[n] [Industrial] Commission file are private except for those reflecting official Commission action," implying that such documents may also be shielded from discovery by privilege if timely and properly asserted).

¶ 26 Thus, information in the Commission's file that "is collected and used for the purpose of settling the claim of a compensation claimant ... is protected from the prying of unauthorized individuals to the same extent as the records of a private person." *Holohan,* 97 Ariz. at 126, 397 P.2d at 627. *See also* 1986 Ariz. Op. Atty. Gen. 103 (finding "no reason [why] reports of on-the-job injuries should not be made public," concluding that "the personal identifying information should be redacted from the claim forms, leaving the name of the employer and the nature and cause of the injury" and releasing upon request such edited forms, and noting that "medical files" typically are excepted from the general rule of public disclosure).

¶ 27 Pursuant to the workers' compensation statutes, "[a]ny interested party or his authorized agent shall be entitled to inspect any claims file of the commission." § 23–941(H). *See also* Ariz. Admin. Code R20–5–108(A) ("The claims files and all matters contained therein shall be considered private and confidential and shall be available for inspection and copying only by an interested party to a proceeding before the Commission or the party's duly authorized representative."); R20–5–131 (interested parties or their authorized representatives may inspect and copy claims file, including medical and hospital reports). As noted in ¶ 21 above, the state has not established its status as either an "interested party" or "authorized agent" for purposes of inspecting, much less introducing in a criminal prosecution, otherwise privileged medical evidence from a workers' compensation file. In sum, neither the record nor the applicable law supports the state's position that the privilege either does not apply or, if it does, has been impliedly waived by Wilson here.

## III. Exception to Privilege for IME

¶ 28 Relying on *Hafner v. Beck,* 185 Ariz. 389, 916 P.2d 1105 (App.1995), the state lastly contends the privilege is unavailable to Wilson because Krasner saw him for an IME, not as a treating physician. We concluded in *Hafner* that, because no doctor/patient relationship existed between an IME physician and the workers' compensation claimant whom he had examined, the physician owed no duty to the claimant, but only to the workers' compensation carrier that had requested the physician's services. Thus, the claimant had no actionable medical malpractice claim against the IME physician. The state contends, and the trial court essentially agreed, that the privilege does not apply to an examinee's communications with an IME physician. *See Turrentine,* 152 Ariz. at 66, 730 P.2d at 243 (§ 13–4062(4) does not apply to defendant's statements made to non-treating physician); *cf. Steelman,* 120 Ariz. at 317, 585 P.2d at 1229 (no privilege when defendant is examined on orders of court or prosecutor with respect to issues for trial). Even if *Beck* tangentially supports that proposition, however, we find no error in the trial court's exclusion of Krasner's testimony.

¶ 29 In the absence of clear, objective evidence to the contrary, the patient's reasonable, subjective belief as to the purpose of the examination controls whether a privilege does or does not apply. *See Steelman,* 120 Ariz. at 317, 585 P.2d at 1229 ("[I]f the patient believes the examination is for purposes of treatment, the privileges will apply even if there are also other purposes for the examination."); *cf. Fodor,* 179 Ariz. at 448, 880 P.2d at 668 ("The test for determining whether a communication is protected by the attorney-client privilege is a subjective one; it focuses primarily on the state of mind of the client."). The state had the burden of proving that, before or during Krasner's examination, Wilson knew that Krasner was an IME physician. *See Carmona v. State,* 941 S.W.2d 949, 953 (Tex.Ct.Crim.App.1997); *cf. Steelman.* The trial court implicitly ruled that the state had failed to meet that burden

and, therefore, found no waiver of the privilege from the evidence presented.

¶ 30 The record reasonably supports that ruling. For example, Krasner's report was neither entitled nor referred to any "independent medical examination." Although Krasner stated during a pretrial interview that he normally asked patients to sign an authorization for an IME, he could not recall whether Wilson had signed such a form or whether he had discussed the form with Wilson. Krasner's file relating to Wilson contained no such form. Moreover, the letter that the City's workers' compensation administrator sent to Wilson to schedule his visit with Krasner referred to the appointment as a "consultation" and was identical to two other letters the administrator previously had sent to Wilson to notify him of other appointments with treating, non-IME physicians. And finally, a notation in the administrator's claim file that, when Krasner "sees [Wilson] he can give new [treatment] plan," suggests that the Krasner appointment was not for an IME.

¶ 31 The prosecutor avowed to the trial court that Krasner, based on the standard procedure he had followed at "each and every treatment session," would "swear under oath that he did advise [Wilson] this was an independent medical examination and that [Wilson] had the ability to refuse." [7] But, in view of Krasner's prior interviews, the available documentation relating to his examination, and defense counsel's avowal that Wilson "was never advised this was an independent medical examination and that indeed the first time he heard the words IME [was] after Dr. Krasner had examined him, several days later," the record supports the trial court's conclusion that Krasner was "equivocal as to whether or not he [had] advised [Wilson] of the nature of the examination."

¶ 32 The state correctly points out that *Hafner* "does not hold that the privilege is abrogated [only] if the patient of an IME signs a waiver." That observation, however, is irrelevant. *Hafner* did not address any privilege issues, and the status of the defendant as an IME physician in that civil case was undisputed. In the absence of any pertinent legal authority or clear evidentiary support for its position, we find no error in the trial court's rejection of the state's argument, based on the alleged IME, that the privilege did not apply.

## DISPOSITION

¶ 33 In sum, because neither the record nor applicable statutes justifies a general abrogation or waiver of the physician-patient privilege in this case, the trial court did not err in precluding Krasner's testimony. Accordingly, the trial court's ruling is affirmed.

CONCURRING: J. WILLIAM BRAMMER, JR., Presiding Judge, and M. JAN FLÓREZ, Judge.

---

7. The state contends Krasner "was available and willing to testify by telephone," but the trial court "refused to speak" with him. Although the trial court ruled without taking any testimonial evidence, the state has not alleged error on that basis or raised any other procedural issues relating to the trial court's ruling.