*454 Judgment, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered August 20, 2009, quashing the subpoena duces tecum issued by respondent New York State Commission of Correction and served upon Elmhurst Hospital seeking the medical records of a deceased inmate, unanimously affirmed, without costs. Appeal from orders, same court and Justice, entered June 1, 2009 and July 8, 2009, unanimously dismissed, without costs, as subsumed in the appeal from the judgment.
The New York State Commission of Correction is an independent state agency that monitors and inspects all correctional facilities in New York (see NY Const, art XVII, § 5; Correction Law § 45). Within the Commission is a medical review board responsible for, inter alia, investigating “the cause and circumstances surrounding the death of any inmate of a correctional facility” (Correction Law § 47 [1] [a]). In the exercise of its duties, the Commission is authorized to issue and enforce subpoenas in accordance with the CPLR (see Correction Law § 46 [2]).
This case arises from the Commission’s investigation into the death of inmate Carlos Frazier. Frazier was admitted to Elmhurst Hospital sometime in 2008 and was later transferred to Bellevue Hospital where he died on August 19, 2008. On August 27, 2008, the Commission served a subpoena duces tecum upon Elmhurst Hospital seeking production of Frazier’s medical and mental health records. No one had executed an authorization for the records on behalf of the decedent. Petitioner New York City Health and Hospitals Corporation (HHC), which operates Elmhurst Hospital, brought this proceeding to quash the subpoena and Supreme Court granted HHC’s application.
The subpoena was properly quashed because the records are protected from disclosure by the physician-patient privilege. CPLR 4504 (a) provides that “[ujnless the patient waives the privilege, a person authorized to practice medicine . . . shall not be allowed to disclose any information which he acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity.” A physician or hospital may assert the privilege for the protection of a patient who has not waived the privilege (Matter of Grand Jury *455 Investigation of Onondaga County, 59 NY2d 130, 135 [1983]) and the privilege survives death (Liew v New York Univ. Med. Ctr., 55 AD3d 566 [2008]).
There is no question that the records sought by the Commission’s subpoena fall within the ambit of the physician-patient privilege. Nevertheless, the Commission argues that its statutorily-mandated investigative functions would be frustrated if it were required to obtain authorizations before obtaining the medical records of deceased inmates. The mere fact that the Commission is authorized to issue subpoenas in aid of its investigations, without more, is insufficient to eradicate the protections afforded by the physician-patient privilege (see Matter of Grand Jury Investigation of Onondaga County, 59 NY2d at 132 [quashing grand jury subpoena on physician-patient privilege grounds]).
Although the Commission’s goal of thoroughly investigating inmates’ deaths is laudable, there is no general public interest exception to the privilege (People v Sinski, 88 NY2d 487, 492 [1996]). Rather, “exceptions to the statutorily enacted physician-patient privilege are for the Legislature to declare” (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d at 136). Here, no exception to the privilege is contained in any of the Correction Law provisions governing the Commission and its functions, and the Commission points to no other statutes creating any such exception for the records sought.
The Commission’s argument that Elmhurst Hospital cannot assert the physician-patient privilege because it is a target of the investigation into Frazier’s death is raised for the first time on appeal, and thus is not properly before us (see Jean v Kabaya, 63 AD3d 509 [2009]). Were we to consider it, we would reject it based on the sparse record before us. Although the privilege does not protect disclosure of patient records where a hospital is being investigated by a grand jury in connection with possible crimes committed against its patients (see Matter of Grand Jury Proceedings [Doe], 56 NY2d 348 [1982]) or where there is an investigation by a government agency into allegations of physician misconduct (see Atkins v Guest, 201 AD2d 411 [1994]), the Commission failed to make even a “minimal threshold showing” (id. at 411) that either of these exceptions applies here. The Commission did not submit an affidavit explaining the nature of its investigation and there is no specific evidence in the record to show that Elmhurst Hospital, or any physician working there, is being investigated for any crimes or other misconduct.
Indeed, the record is devoid of any facts as to the circum *456 stances of Frazier’s death. Thus, it is not known why Frazier was taken to Elmhurst, how long he stayed there or why he was transferred to Bellevue. Nor is there any indication as to the cause of his death. Given the absence of any facts to show that Elmhurst Hospital or its physicians actually are the subject of the Commission’s investigation, there is no basis to abrogate the physician-patient privilege. In light of this determination, we need not reach the question of whether the Health Insurance Portability and Accountability Act of 1996 (42 USC § 1320d et seq., as added by Pub L 104-191, 110 US Stat 1936) provides independent grounds to quash the subpoena. Concur—Friedman, J.R, Sweeny, DeGrasse, Richter and Manzanet-Daniels, JJ.